In the Matter of the Receivership of International Radiator Company.

*New Castle, Oct.* 20, 1914.

Ordinarily a corporation may purchase its own stock, when the purchase does not diminish its ability to pay debts or lessen the security of its creditors.

The Delaware General Corporation Law provides that a corporation may not use its funds or property to purchase shares of its own stock, when such use will cause an impairment of its capital. *Held*, that the word "capital," as so used, did not mean the assets of the company, but was intended to imply that the funds and property of the corporation should not be used to purchase its own shares, when the value of its assets was less than the aggregate amount of all the shares of its capital stock; and hence the corporation, under such circumstances, had no authority to make a contract to re-purchase its own shares at an advance, from one to whom it had sold the same.

A corporation may pledge unissued stock as collateral security for a loan made to it, and when stock is so pledged the creditor may prove his debt against the corporation's receiver and return the stock.

Exceptions to claim filed by Benjamin E. Harris. The facts are stated in the opinion of the Chancellor:

*Marvel, Marvel and Wolcott*, for the claimant.
*Charles F. Curley*, for the receiver.

THE CHANCELLOR.    This claim is for $7,500 for damages based on the failure of the company to comply with an agreement with Harris, whereby Harris in April, 1913, gave to the company his notes aggregating $5,000 in payment for 1,000 shares of stock of the company; of par value of $10, which shares the company agreed to sell for him to net him $7.50 per share, to be paid to him on or before August 1, 1913.    The notes were given to the company, and the proceeds thereof by a discount thereof were received by it.    The stock was not sold, and the notes were paid by Harris.    In substance, for $5,000, the company agreed to pay $7,500 from the proceeds of the sale by it of shares of its capital stock subscribed for by Harris. The legal effect of the agreement is, of course, that in case it was unable to sell the shares of stock it would buy them back, and the claim filed by Harris is necessarily based on this principle.

It may be considered doubtful whether the corporation had a right to make such a contract, even if solvent, and if the rights of creditors were not affected.    Subscriptions to capital stock should not be made subterfuges to borrow money under unusual terms, nor should countenance be given to sales made by a corporation of shares of its capital stock in such irregular ways, especially where the advantage is disproportionately in favor of the purchaser.    But when at the time the bargain is made the rights of creditors of the company are, or would be, affected by it, then clearly such an agreement is unenforcible against the assets of the company in the hands of a receiver subsequently appointed by reason of insolvency.

The undoubted weight of authority is that a corporation, without express authority, and when not prohibited by their charter, or by statute, may buy its own shares, provided they do so in good faith, without intending to injure its creditors and without in fact injuring them.    4 *Thompson on Corporations*, §4075 (contra, §4076).    A corporation cannot purchase its own shares of stock when the purchase diminishes the

ability of the company to pay its debts, or lessens the security of its creditors.    5 *Thompson on Corporations*, §6177.

The claim is further affected by the statute in Delaware. By the General Corporation Act under which the company was incorporated, the company could not use its funds or property to purchase shares of its own capital "when such use would cause an impairment of the capital of the corporation".    At the time when the agreement was made with Harris, and at the time the receiver was appointed, the capital stock of the company was about $400,000, presumably issued for value, while its assets were appraised at $13,000 by the appraisers in the receivership cause.    It is said that about $75,000 of stock was issued for patents, etc.    But even adding this sum to the appraised value of the assets of the company, still the payment of the claim of Harris from the assets to come into the hands of the receiver will, of course, deplete the capital.

Therefore, the question is whether an agreement of a corporation to sell shares of its own capital stock for a stockholder, is not as to a claim by the stockholder for the sum of money at which the company agreed to sell it, a purchase by the company of such shares?

A claim for the price at which the company agreed to sell the shares is certainly equivalent to an agreement to purchase at that price, and equally within the spirit of the act and equally unlawful, if the enforcement of such an agreement impaired the capital of the company.    Any one dealing with the corporation is bound to know the limitations put on it by the statute under which it was created.    In the statute the impairment of the "capital" of the company is mentioned.    As here used, this means the reduction of the amount of the assets of the company below the amount represented by the aggregate outstanding shares of the capital stock of the company.    In other words, a corporation may use only its surplus for the purchase of shares of its own capital stock.    "Capital" does not in this connection mean the assets of the company, for, of course, the assets are reduced when any of it is used by a corporation to purchase shares of its own capital stock.    It must have some other meaning then.    The statute must mean, therefore, that

the funds and property of the company shall not be used for the purchase of shares of its own capital stock when the value of its assets is less than the aggregate amount of all the shares of its capital stock.  A use by a corporation of its assets to purchase shares of its own capital stock under such conditions impairs the capital of the company.

As these conditions existed when the contract was made between Harris and the International Radiator Company, the contract is not now enforcible against the assets in the hands of the receiver, and the claim is disallowed.

EXCEPTIONS to claim filed by Harry L. Knight.

*C. Clarence Palmer*, of the New Jersey Bar, for the claimant.
*Charles F. Curley*, for the receiver.

THE CHANCELLOR.  The claim of Harry L. Knight is based on two notes made by the company, and the exceptions taken thereto are that they were given for stock of the company purchased by Knight, while it was contended for Knight that the stock issued to Knight was given to him as collateral security.  Originally there was another note, which was paid by the company and Knight then transferred back to the company a proportionate part of the stock which he had received as collateral security.  There was some doubt raised by the form of the written agreement of the company, whether this was a sale or a pledge of stock.  But the dealings of the parties were such as to be inconsistent with a sale and consistent only with a pledge.  A corporation may pledge its unissued shares of capital stock as collateral security for a loan made to it.  His claim as a creditor is, therefore, allowed, but Knight must return the stock of the company which he holds under the agreement.

The exceptions to the claim of Knight are disallowed and the claim is allowed.