### In re MOTELS OF AMERICA, INC., a Delaware corporation, et al.

**Bankruptcy Nos. 90–1008, 91–0330 and 91–0434.**

United States Bankruptcy Court, D. Delaware.

Aug. 18, 1992.

Joanne B. Wills, Wilmington, Del., for debtor.

David B. Stratton, Wilmington, Del., for official committee of unsecured creditors.

Erin K. Brignola, Wilmington, Del., for Vernon Ellis, Jr.

HELEN S. BALICK, Bankruptcy Judge.

This is the court's decision on the objections of Motels of America, Inc. and the Official Committee of Unsecured Creditors to Vernon Ellis, Jr.'s proof of claim (No. E–12) for $464,720.00, seeking general unsecured status.

*Facts*

According to the record before the court, Ellis was an employee of MOA who retired in 1988. On August 1, 1988, the parties entered into an "Option To Purchase And Put Right" agreement which MOA admits was designed to give Ellis an income stream over the next ten-year period. At that time he owned 58,090 shares of MOA common stock. Ellis' claim is based upon this agreement.

The agreement granted Ellis the option to sell to MOA up to 5,809 (10%) of his shares per year at a fixed price of $10.00 per share. The term of the option was ten years. In the event of a reorganization, the purchase price per share would be proportionately adjusted so that upon the exercise of his option, he would be entitled to the same pecuniary amount as if the option had "been exercised immediately prior to the happening of such event." ¶ 5. The share certificates were placed in escrow during the pendency of the agreement. ¶ 8. Ellis was not to sell or otherwise encumber the shares. Finally, Ellis assigned to the Chairman of the Board of MOA an irrevocable proxy to vote the escrowed shares.

MOA's obligations to honor the exercise of Ellis' rights were:

> [S]ubject to the limitations of Delaware Corporation law prohibiting a corporation from purchasing its own shares when such repurchase would cause an impairment of capital of the corporation.

Agreement, ¶ 4.

Pre-petition, Ellis exercised his put option thrice. Each time the put was for 5,809 shares. Each time MOA paid him for the shares as obligated. Thus, at the time of MOA's bankruptcy filing, November 11, 1990, the escrow agent held a remaining 40,663 shares.

In January 1991 (post-petition), Ellis contacted MOA about exercising his put for a fourth time. MOA took no action and Ellis filed the present proof of claim. While the claim states the amount of $464,720.00, Ellis has since amended his claim to $406,-

630.00, which appears to be the mathematically correct amount based upon the $10.00 per share value.

*Discussion*

■ The objectors first argue that the corporate law of Delaware voids the redemption agreement. *In re International Radiator Co.*, Del. Ch., 92 A. 255 (1914) established that a corporation cannot redeem stock when its capital is impaired. The Delaware Corporation Statute codifies this rule, but further states that:

> Nothing in this [section] shall invalidate or otherwise affect [an] obligation of a corporation ... if at the time such ... obligation was delivered by the corporation its capital was not then impaired or did not thereby become impaired.

8 *Del.C.* § 160(a)(1). *See also In re Reliable Mfg. Corp.*, 703 F.2d 996, 1002 (7th Cir.1983) (section 160(a)(1) "strongly suggests that the relevant time ... is the time at which the challenged obligation was entered into").

■ A corporation is impaired when "the value of its assets is less than the aggregate amount of all the shares of its capital stock." *International Radiator*, 92 A. at 256. MOA presented no evidence showing it was impaired when the agreement was formed, or at any subsequent pre-petition time. The agreement is not void.

■ The next two arguments of the objectors shall be considered together. MOA argues that to the extent his claim is allowed, it should be subordinated pursuant to 11 U.S.C. § 510(b), which in summary, subordinates certain claims of *security holders*. The Committee argues that the absolute priority rule proscribes payment "on account of such junior claim," 11 U.S.C. § 1129(b)(2)(B)(ii), such as the claim of a equity security holder.

■ Both these arguments fail, as they erroneously presume that Ellis is an equity security holder. An equity security holder is the holder of a share in a corporation, such as the common stock here. 11 U.S.C. § 101(16)(A). Ellis, however, is not the "holder" of these shares. The option agreement divested Ellis of all the indicia of ownership—an escrow agent holds the certificates, MOA has the voting rights, Ellis cannot sell the shares, and Ellis' pecuniary rights under the put option are not affected by any corporate reorganizations. These contractual terms are consistent with the purpose of the agreement—to provide Ellis with an income stream in exchange for giving up the rights and risks associated with an equity security holder. The arrangement between MOA and Ellis also falls outside the Securities and Exchange Commission definition of a beneficial owner of a security. In relevant part, its regulations include only those who have the power to either vote or dispose of the security. 17 C.F.R. § 240.13d–3(a) (1991).

■ However, the court observes that while Ellis filed his proof of claim as a general unsecured claim, MOA honored the agreement during the pre-petition period. Therefore, there is no valid pre-petition claim that would be discharged pursuant to 11 U.S.C. § 727(b). The only period during which MOA could breach the agreement is post-petition. As to rights and obligations that arise post-petition, the matter is not ripe for adjudication.

Ellis has no pre-petition claim. Thus, his proof of claim in the amount of $464,-720.00, as amended to $406,630.00, is DISALLOWED.

IT IS SO ORDERED.