TRUSERV CORPORATION, Plaintiff-Appellant, v. BESS HARDWARE AND SPORTS, INC., d/b/a Bess True Value, Defendant-Appellee.

Second District    No. 2—02—1289

Opinion filed January 21, 2004.—Rehearing denied March 3, 2004.

Terry F. Moritz, David J. Chizewer, and James P. Madigan, all of Goldberg, Kohn, Bell, Black, Rosenblum & Moritz, of Chicago, for appellant.

Rebecca K. Michalek and Gregg A. Flitcraft, both of Olson, Grabill & Flitcraft, of Northbrook, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, TruServ Corporation, appeals from the judgment of the circuit court of McHenry County granting summary judgment in favor of defendant, Bess Hardware and Sports, Inc., d/b/a Bess True Value, on defendant's counterclaim. For the reasons that follow, we affirm in part and reverse in part.

## I. BACKGROUND

Plaintiff, a Delaware corporation with its principal place of business in Chicago, Illinois, is a hardware cooperative whose members operate retail outlets nationwide, primarily as True Value stores. Members of the cooperative sign contracts (member agreements) enabling them to use the True Value trademark and to benefit from the group buying power, group billing procedures, and other benefits that plaintiff offers its members. Members' relationships with plaintiff are governed by TruServ's certificate of incorporation, TruServ's by-laws[1], the member agreements, and members' subscriptions to shares. To join the cooperative, each member must purchase 60 shares of TruServ's class A common stock, with a par value of $100 per share, for each store owned. In a year in which plaintiff makes a profit, it distributes a portion of its earnings to each member in the form of "patronage dividends." The annual patronage dividends are paid in proportion to each member's aggregate purchases from plaintiff during a particular fiscal year and generally consist of a combination of cash, promissory notes, and TruServ's class B common stock.

Article VII, section 6(a), of TruServ's bylaws requires the corpora-

---

[1]The record contains three versions of TruServ's bylaws. The earliest version carries an effective date of April 7, 1998. The other two versions were effective on July 15, 2000, and December 17, 2001, respectively. Unless otherwise noted, all citations to TruServ's bylaws refer to the version of the bylaws effective April 7, 1998.

tion to redeem the member's capital stock in the corporation upon termination of its member agreement subject to the terms and conditions set forth in article VII, section 7, of the bylaws. Article VII, section 7(a), provides in relevant part:

> "Upon the effective date of the termination of a Member Agreement *** all of this Corporation's stock owned by such stockholder (hereinafter referred to as 'Terminated Stockholder') shall be deemed to be and shall be and become the property of this Corporation; from and after such date all rights and privileges incident to the ownership of the shares (including but not limited to the right to dividends thereon) shall cease, except only the right to receive the purchase price (as hereinafter provided) plus a sum equal to any dividends declared but unpaid at said date and accrued Patronage Dividends for the relevant year or portion thereof *** all without interest and subject to the Corporation's liens and right of setoff."

In addition, article VII, section 7(b), requires TruServ to remit the redemption price to the terminated stockholder "immediately upon receipt of properly endorsed certificates representing all of a Terminated Stockholder's stock of the Corporation." However, pursuant to article VII, section 7(c), of the bylaws, if:

> "the funds of the Corporation legally available for such purpose are insufficient for immediate payment of all or any part of the redemption price, an agreement for purchase and sale of the stock shall be executed by the Corporation and the Terminated Stockholder pursuant to which the Corporation shall unqualifiedly undertake to pay all or the balance, as the case may be, of the redemption price as soon as funds are legally available for that purpose."

On or about March 1, 1963, and again on March 7, 1983, defendant signed member agreements with plaintiff. Defendant operated one True Value store in Northfield, Illinois, and one in Glenview, Illinois. Because defendant operated two True Value stores, it purchased 120 shares of TruServ's class A common stock for $12,000.

In fiscal year 1999, plaintiff suffered a loss totaling $131 million. A special meeting of plaintiff's board of directors was held on March 17, 2000. At that meeting, the board learned that, as a result of the $131 million loss, the book value of plaintiff's stock had been reduced to $35.60 per share. According to the minutes of the meeting, the difference between the par value of the stock and the book value of the stock was critical because the company "cannot have Members redeeming their stock for a par value of $100, while book value is as [sic] $35.60, without impairment." As a result, the Board unanimously adopted the following resolution (hereinafter, moratorium):

"**RESOLVED**, that a moratorium on redemption of A Stock and B Stock be and hereby is adopted and the appropriate officers of the Company be and hereby are directed to refrain from redemption of such stock.

**FURTHER RESOLVED**, the Board of Directors shall monitor this matter and from time to time shall review whether it is appropriate to resume redemption of A Stock and B Stock."

At the time the moratorium was adopted, all but one of the directors of TruServ's board were members of the cooperative.

Then, on August 28, 2000, the board passed a resolution adopting a "Loss Allocation Plan" to allocate the 1999 loss among its members. The Loss Allocation Plan divided almost $114 million of the loss among "each current TruServ Stockholder." The remaining loss was not specifically allocated, but borne by the cooperative as a whole. Plaintiff allocated the loss to members based upon the percentage that each member's class B nonvoting common stock holdings bore to such holdings of all stockholders. According to the plan, each member would satisfy its "loss allocation account" by application of future patronage dividends. If a member left the cooperative prior to the satisfaction of its loss allocation account, any unsatisfied portion of such account would be offset against the redemption price otherwise due to the terminated member. Plaintiff announced the loss allocation plan to its members in a letter dated September 5, 2000. Plaintiff issued a loss allocation statement to defendant apportioning to it a percentage of TruServ's 1999 loss.

Meanwhile, on February 29, 2000, defendant formally notified plaintiff of its decision to terminate its membership in the cooperative. Under the terms of the member agreement, said termination would have been effective on April 30, 2000. However, on April 10, 2000, plaintiff terminated defendant's membership in the cooperative due to defendant's failure to pay for certain merchandise and services provided by plaintiff. As a result of the moratorium, plaintiff refused to redeem defendant's stock in TruServ.

On May 5, 2000, plaintiff filed suit against defendant seeking to collect for the unpaid-for merchandise and services. On September 25, 2000, defendant filed an answer and affirmative defense to plaintiff's suit. Defendant was subsequently granted leave to withdraw count I of its affirmative defense and refile it as a counterclaim. In its counterclaim, defendant contended that the loss allocation plan did not apply to it because it was not a member of the cooperative at the time that the loss allocation plan was adopted. Specifically, defendant noted that pursuant to article VII, section 6(a), of TruServ's bylaws, plaintiff was required to redeem defendant's stock at par value upon

the termination of its member agreement. Further, relying on the provisions of article VII, section 7, of the bylaws, defendant reasoned that any loss allocated to it under the loss allocation plan should have been allocated to plaintiff since defendant's membership in the cooperative was terminated effective April 10, 2000, and the loss allocation plan was not adopted until August 28, 2000. Finally, defendant alleged that it was entitled to a setoff against any amount due to plaintiff for the full redemption value of defendant's class A and class B stock in TruServ.

Thereafter, plaintiff filed a motion for summary judgment on its claim. Defendant filed a motion for declaratory judgment and partial summary judgment with respect to its counterclaim against plaintiff, and plaintiff filed a cross-motion for summary judgment with respect to defendant's counterclaim. On June 21, 2002, the trial court granted summary judgment in plaintiff's favor on its claim against defendant. The court also granted defendant's motion for summary judgment on its counterclaim. Specifically, the court concluded that defendant was entitled to a credit for the par value of its class A and class B stock against the monies owed plaintiff without any reduction for the loss allocation plan. The court therefore denied plaintiff's cross-motion for summary judgment. Subsequently, the trial court denied the parties' posttrial motions. In its order, the trial court entered a written finding that there was no just reason for delaying either enforcement or appeal of its order. See 155 Ill. 2d R. 304(a). This appeal ensued. We review a grant of summary judgment *de novo. Basselen v. General Motors Corp.*, 341 Ill. App. 3d 278, 282 (2003). In addition, we note that because plaintiff is a Delaware corporation, Delaware law governs the resolution of the issues presented herein. See *Foley v. Santa Fe Pacific Corp.*, 267 Ill. App. 3d 555, 559 (1994); *Seinfeld v. Bays*, 230 Ill. App. 3d 412, 420 (1992).

## II. ANALYSIS

We are presented with two principal issues. First, we must determine whether the moratorium adopted by TruServ's board of directors on March 17, 2000, was adopted in accordance with TruServ's governing documents or if the board's action was otherwise required by Delaware law. Second, we must determine whether the loss allocation plan was applicable to defendant.

On appeal, plaintiff advances three reasons in support of its argument that this court should reverse the trial court's order finding the moratorium invalid. First, plaintiff asserts that the board of directors' decision in adopting the moratorium was protected by the business-judgment rule. Second, plaintiff contends that because the moratorium

was adopted in accordance with the corporation's governing documents regarding bylaw amendments, the moratorium constituted a valid amendment of the bylaws. Third, plaintiff argues that, under the Delaware General Corporation Law (Del. Code Ann. tit. 8, § 160 (2001)), its board of directors was required to adopt the moratorium because the corporation's capital was impaired.

Plaintiff also argues that the trial court erred in ruling that the loss allocation plan was not applicable to defendant. Plaintiff asserts that it equitably allocated the 1999 loss that the corporation sustained. In addition, plaintiff reasons that the adoption of the moratorium caused defendant to remain a stockholder of TruServ. Thus, a portion of the 1999 loss was properly allocated to defendant. Alternatively, plaintiff asserts that because defendant was a member of the cooperative during the time period that the loss was sustained, it could properly assess a portion of the loss against defendant regardless of whether defendant was a member of the cooperative at the time the loss allocation plan was adopted. For the reasons discussed below, we conclude that under Delaware law, plaintiff's capital was impaired. Accordingly, plaintiff was not required to immediately remit to defendant the redemption price for its TruServ stock[2]. However, we also conclude that the loss allocation plan did not apply to defendant. Thus, we reverse the judgment of the trial court in part and affirm in part.

## A. Capital Impairment

Plaintiff asserts that the moratorium on the redemption of terminated members' stock was required by Delaware law, which contains a general prohibition against redeeming stock when doing so would impair the capital of the corporation. Defendant counters that TruServ's capital was never impaired because it had positive net assets. We agree with plaintiff.

■ Under Delaware law, the fact that a corporation has positive net assets is irrelevant in determining whether a corporation's capital is impaired. Delaware law provides that a corporation may not redeem its stock if the redemption would cause an impairment of capital unless expressly authorized by section 160 of the Delaware General Corporation Law (Del. Code Ann. tit. 8, § 160 (2001)). *Klang v. Smith's Food & Drug Centers, Inc.*, 702 A.2d 150, 153 (Del. 1997). Section 160 of Delaware's General Corporation Law provides in relevant part:

"(a) Every corporation may purchase, redeem, receive, take or otherwise acquire, own and hold, sell, lend, exchange, transfer or

---

[2]Because we base our decision on capital impairment, we find it unnecessary to address the other arguments raised by plaintiff regarding the validity of the moratorium.

otherwise dispose of, pledge, use and otherwise deal in and with its own shares; provided, however, that *no corporation shall*:

> (1) *Purchase or redeem its own shares of capital stock for cash or other property when the capital of the corporation is impaired or when such purchase or redemption would cause any impairment of the capital of the corporation*, except that a corporation may purchase or redeem out of capital any of its own shares which are entitled upon any distribution of its assets, whether by dividend or in liquidation, to a preference over another class or series of its stock, or, if no shares entitled to such preference are outstanding, any of its own shares, if such shares will be retired upon their acquisition and the capital of the corporation reduced in accordance with §§ 243 and 244 of this title."

(Emphasis added.) Del. Code Ann. tit. 8, § 160 (2001).

Although the term "capital impairment" is not defined by statute, courts interpreting section 160 of the Delaware General Corporation Law have uniformly declared that a corporation impairs its capital unless it redeems out of "surplus." *Wright v. Heizer*, 503 F. Supp. 802, 810 (N.D. Ill. 1980) ("A corporation redeeming its own shares would impair its capital within the meaning of § 160 unless it redeems shares out of 'surplus' "); *Kohls v. Duthie*, 791 A.2d 772, 784 (Del. Ch. 2000) ("A surplus exists (meaning that the capital is not impaired) when the net assets of a corporation exceed its total liabilities"); *In re International Radiator*, 92 A. 255, 256, 10 Del. Ch. 358, 360 (1914) ("[A] corporation may use only its surplus for the purchase of shares of its own capital stock"). The term "surplus" is defined as the excess of net assets over the par value of the corporation's issued stock. See Del. Code Ann. tit. 8, § 154 (2001); see also *Wright*, 503 F. Supp. at 810; *Kohls*, 791 A.2d at 784; *Klang*, 702 A.2d at 153. Section 154 defines the term "net assets" as "the amount by which total assets exceed total liabilities." Del. Code Ann. tit. 8, § 154 (2001). In other words, "[a] repurchase impairs capital if the funds used in the repurchase exceed the amount of the corporation's 'surplus.' " *Klang*, 702 A.2d at 153; see also *International Radiator*, 92 A. at 256, 10 Del. Ch. at 361 ("[T]he funds and property of the company shall not be used for the purchase of shares of its own capital stock when the value of its assets is less than the aggregate amount of all the shares of its capital stock").

■ In this case, plaintiff presented evidence that, on or about March 17, 2000, the date that TruServ's board of directors adopted the moratorium, the aggregate par value of TruServ's capital stock was $222,239,200 and the value of its net assets was $148,722,000. Thus, plaintiff did not have a surplus because its net assets did not exceed the aggregate par value of TruServ's capital stock. Conse-

quently, TruServ's capital was impaired. Del. Code Ann. tit. 8, § 160(a)(1) (2001); see also *Wright,* 503 F. Supp. at 810; *Kohls,* 791 A.2d at 784; *Klang,* 702 A.2d at 153; *International Radiator,* 92 A. at 256, 10 Del. Ch. at 360. To the extent that TruServ's bylaws are to the contrary, Delaware law prevails. *Frantz Manufacturing Co. v. EAC Industries,* 501 A.2d 401, 407 (Del. 1985) (noting that a bylaw that is inconsistent with any statute is void).

Defendant asserts that even if TruServ's capital was impaired, Delaware law does not prohibit the redemption of stock in this case because the statute upon which plaintiff relies contains an exception for stock that is retired by the corporation after its redemption. Specifically, defendant relies on language from section 160 of the Delaware General Corporation Law, which provides that a corporation "may" redeem out of capital any of its own shares if the shares will be retired upon acquisition and the capital of the corporation reduced. Del. Code Ann. tit. 8, § 160 (2001). However, the statutory language referenced by defendant is permissive rather than mandatory. Del. Code Ann. tit. 8, § 160 (2001) ("[A] corporation *may* purchase or redeem out of capital any of its own shares which are entitled upon any distribution of its assets, whether by dividend or in liquidation, to a preference over another class or series of its stock, or, if no shares entitled to such preference are outstanding, any of its own shares, if such shares will be retired upon their acquisition and the capital of the corporation reduced in accordance with §§ 243 and 244 of this title" (emphasis added)). Thus, plaintiff was not required to invoke this exception.

Defendant points out that plaintiff declared a patronage dividend in 2001. According to defendant, it is "ludicrous" that TruServ would declare a patronage dividend in 2001 while not redeeming defendant's stock. However, as plaintiff observes, Delaware law is more restrictive when dealing with capital impairment than with paying patronage dividends. Section 170(a) of the Delaware General Corporation Law allows a corporation, subject to any restrictions in its certificate of incorporation, to pay patronage dividends out of net profits for the fiscal year if there is no surplus. In sum, we conclude that, pursuant to Delaware law, plaintiff's capital was impaired because its net assets did not exceed the aggregate par value of its capital stock. As a result, plaintiff was prohibited from immediately remitting the redemption price for defendant's TruServ stock.

## B. Loss Allocation Plan

As noted previously, TruServ incurred a loss of $131 million in its 1999 fiscal year. In response, on August 28, 2000, TruServ's board of directors adopted the following resolution:

"**RESOLVED**, that a Loss Allocation Account shall be established *for each current TruServ Stockholder* that reflects such Stockholder's proportionate share of TruServ's patronage loss realized for its 1999 fiscal year, which share shall be based upon the percentage that such Stockholder's Class B nonvoting common stock holdings bear to such holdings of all Stockholders;

Such Account shall be satisfied by applying against such Account future patronage dividend distributions of Class B nonvoting common stock (at par value thereof) to which a Stockholder, as a TruServ Member, may become entitled; provided that if a Member's Membership has terminated or expired, or does terminate or expire prior to the satisfaction of its Loss Allocation Account, any then unsatisfied portion of such Account shall be offset against the redemption price otherwise due to the terminated Member for its Class B nonvoting common stock.

The executive officers of TruServ, or any one of them, are hereby authorized and directed, by, in the name and on behalf of TruServ, to take such actions as they, he or she may deem necessary and appropriate to carry out the purposes and intent of the foregoing." (Emphasis added.)

The trial court determined that the loss allocation plan did not apply to defendant. The court reasoned that pursuant to TruServ's bylaws, on April 10, 2000, the date that defendant's membership in the cooperative was terminated, defendant's stock became the property of plaintiff. As a result, defendant was not a "current TruServ Stockholder" on the date the resolution adopting the loss allocation plan was passed.

Plaintiff disagrees with the trial court and identifies three reasons why it properly allocated a share of the 1999 loss to defendant. First, plaintiff asserts that cooperatives, by their nature, have the authority to allocate losses, and the method chosen was the most equitable method. Second, plaintiff argues that as a result of the moratorium, defendant remained a stockholder on the date the loss allocation plan was adopted, and therefore fell within the scope of the plan. Finally, plaintiff argues that even if defendant was not a stockholder at the time the loss allocation plan was adopted, it was lawful for TruServ to allocate a share of the loss to defendant because it was a member of the cooperative during the time the loss was incurred. We disagree with all three propositions.

Plaintiff initially argues that it had the authority to allocate the 1999 loss among its stockholders. For purposes of our discussion, we will assume that plaintiff did have the authority to allocate the 1999 loss among its stockholders. The issue we are asked to confront, however, is not whether plaintiff had the right to allocate the 1999

loss among the stockholders. Rather, we must resolve whether plaintiff exercised this right in passing the August 28, 2000, resolution adopting the loss allocation plan. We hold that it did not.

The parties do not dispute that plaintiff terminated defendant's membership agreement effective April 10, 2000. On that date, article VII, section 7(a), of TruServ's bylaws provided in relevant part:

> "(a) **TERMINATION OF RIGHTS AND PRIVILEGES AS STOCKHOLDER.** Upon the effective date of the termination of a Member Agreement *** all of this Corporation's stock owned by such stockholder (hereinafter referred to as 'Terminated Stockholder') shall be deemed to be and shall be and become the property of this Corporation; from and after such date all rights and privileges incident to the ownership of the shares (including but not limited to the right to dividends thereon) shall cease, except only the right to receive the purchase price (as hereinafter provided) plus a sum equal to any dividends declared but unpaid at said date and accrued Patronage Dividends for the relevant year or portion thereof (to be paid in the manner provided for payment of all Patronage Dividends) all without interest and subject to the Corporation's liens and right of setoff."

We note that an identical provision appears in the July 15, 2000, and December 17, 2001, versions of TruServ's bylaws.

■ A corporation's bylaws are construed according to the rules used to interpret statutes, contracts, and other written instruments. *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 343 (Del. 1983). Pursuant to those rules, if the bylaw's language is unambiguous, the bylaw will be construed as written and the court need not resort to extrinsic aids to determine the corporation's intent. *Gentile v. SinglePoint Financial, Inc.*, 788 A.2d 111, 113 (Del. 2001). In this case, the language of article VII, section 7(a), is clear and unambiguous. It is the date that the member agreement is terminated that dictates when a member ceases to be a TruServ stockholder. Upon the effective date of the termination of a member agreement, the terminated stockholder's stock becomes the property of TruServ. Moreover, except for the right to receive the purchase price of the shares plus certain dividends, all rights and privileges incident to the ownership of such shares shall cease.

■ In this case, defendant's member agreement was terminated on April 10, 2000. Thus, pursuant to article VII, section 7(a), defendant ceased being a stockholder of TruServ as of April 10, 2000. Since the loss allocation plan adopted on August 28, 2000, applied only to "current TruServ Stockholders," plaintiff could not allocate a share of the 1999 loss to defendant.

According to plaintiff, the trial court's determination that defendant was not a stockholder effective April 10, 2000, rested entirely on its ruling that the moratorium was invalid. Although we have concluded that under Delaware law, the moratorium was a proper response to plaintiff's financial situation, our holding that the loss allocation plan did not apply to defendant does not depend on the validity of the moratorium.

TruServ's bylaws treat the *transfer of stock* upon termination of a member agreement and the *payment* of the redemption price of the stock as two distinct events (compare article VII, section 7(a), of TruServ's bylaws ("[u]pon the effective date of the termination of a Member Agreement *** all of this Corporation's stock owned by such stockholder *** shall be deemed to be and shall be and become the property of this Corporation") with article VII, section 7(b) ("[i]mmediately upon receipt of properly endorsed certificates representing all of a Terminated Stockholder's stock of the Corporation, the Corporation shall remit the redemption price to the Terminated Stockholder") and article VII, section 7(c) (outlining the procedure for payment of the redemption price if "the funds of the Corporation legally available for such purpose be insufficient for the immediate payment of all or any part of the redemption price")). Thus, as we have previously held, a member's status as a stockholder depends entirely on the effective date of the termination of its member agreement with the corporation. It does not depend on the date the redemption price is remitted to the terminated stockholder. The moratorium did not purport to affect the effective date of the termination of a member agreement, and it did not prevent a member from terminating its member agreement. Thus, regardless of the validity of the moratorium, the defining event in determining the status of a member as a stockholder is the effective date of the termination of its member agreement.

Plaintiff also insists that because it continues to provide defendant with proxies by which it can vote its TruServ stock, it remains a stockholder to this day. However, that TruServ continues to recognize plaintiff as a stockholder is irrelevant. Pursuant to the plain language of TruServ's bylaws, defendant ceased being a stockholder upon the effective termination date of its member agreement. Moreover, plaintiff has presented no evidence that defendant has exercised any of these alleged rights. Accordingly, we attribute no significance to the fact that TruServ continues to mail proxies to defendant.

■ Finally, plaintiff asserts that regardless of whether defendant remains a TruServ stockholder, defendant was liable for a share of the loss reported for 1999 because defendant was a member of the coopera-

tive throughout that year. In support of its position, plaintiff cites *Plywood Marketing Associates v. Astoria Plywood Corp.*, 16 Wash. App. 566, 558 P.2d 283 (1976). We find plaintiff's reliance on *Plywood Marketing Associates* misplaced. In *Plywood Marketing Associates*, a cooperative discovered that its operating loss in prior years was substantially greater than had been previously reported and allocated to its members. The court allowed the cooperative to recover a *pro rata* share of the additional loss from a former member for the period during which the withdrawing member still participated in the cooperative. *Plywood Marketing Associates*, 16 Wash. App. at 576-77, 558 P.2d at 286. Notably, the court determined that such allocation was permitted by statute and not precluded by the cooperative's bylaws. We point out that the loss allocation plan involved in *Plywood Marketing Associates* was in place at the time that the member withdrew from the cooperative. In contrast, the loss allocation plan at issue here was not adopted until after the effective date of the termination of defendant's member agreement. In addition, the loss allocation plan adopted by plaintiff, by its own terms, prohibited TruServ from allocating any of the 1999 loss to defendant because defendant was not a "current TruServ Stockholder" at the time the plan was adopted. Plaintiff cites no other provision in its governing documents that would permit it to allocate a share of the 1999 loss to defendant. For these reasons, we find plaintiff's reliance on *Plywood Marketing Associates* unpersuasive.

## III. CONCLUSION

For the aforementioned reasons, we conclude that under Delaware law, plaintiff was prohibited from remitting the redemption price of defendant's stock because plaintiff's capital was impaired. We also conclude that the loss allocation plan was inapplicable to defendant because defendant was not a "current TruServ Stockholder" at the time the loss allocation plan was adopted. Accordingly, we affirm the judgment of the circuit court of McHenry County in part and we reverse in part.

Affirmed in part and reversed in part.

HUTCHINSON and KAPALA, JJ., concur.