**MICHAEL J. WEARY, Appellant/Defendant**

**v.**

**LONG REEF CONDOMINIUM ASSOCIATION, Appellee/Plaintiff**

S. Ct. Civil No. 2008-0021

Supreme Court of the Virgin Islands

July 13, 2012

MICHAEL J. WEARY, St. Thomas, USVI, *Pro se.*

ELLEN G. DONOVAN, ESQ., St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; DUNSTON, *Designated Justice.*[1] HODGE, *Chief Justice*, concurring in part and dissenting in part.

---

[1] Associate Justice Maria M. Cabret was recused from this matter. Michael Dunston, a judge of the Superior Court of the Virgin Islands, sits in her place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

## OPINION OF THE COURT

(July 13, 2012)

Swan, *Associate Justice*. Appellant, Michael J. Weary ("Weary"), appeals the Superior Court's February 28, 2008 Order of Judgment entered in favor of Long Reef Condominium Association ("Long Reef"), ordering him to pay $2,737.75, plus interest, in condominium assessments and fees and granting Long Reef a judgment of foreclosure on a lien[2] recorded against Weary's condominium. Weary argues that the grant of summary judgment was error because the Superior Court erroneously concluded that the assessments and fees were properly assessed according to the By-Laws of the Condominium Association ("By-Laws"). We find no error in the Superior Court's decision to grant summary judgment; therefore, we affirm the judgment.

## I. FACTS AND PROCEDURAL HISTORY

When this lawsuit was initiated, Weary owned a condominium unit within the Long Reef Condominiums complex on St. Croix, Virgin Islands. On August 7, 2004, Long Reef Condominium Association convened one of its annual meetings. (J.A. at 89.) According to the minutes of the meeting, a quorum of qualified unit owners was in attendance. (*Id.*) At the meeting, the unit owners decided that there was a need for major repairs to the condominium's parking lot. (*Id.*) A motion was made by one of the unit owners to have Long Reef's Board of Directors ("the Board") assess a special fee upon the condominium unit owners in order to generate funds to re-surface and fence the parking lot at a cost of up to $80,000.00. Any expenses exceeding that amount would require further approval by the unit owners. (J.A. at 90.) The unit owners also decided that the amount of the assessment for the parking lot would be determined according to the common interest percentage of ownership of each of the unit owners, and that each unit owner would receive a notice of the special assessment. (J.A. at 90.) The unit owners voted, and the motion to authorize the Board to assess fees for parking lot repairs was passed. (*Id.*)

---

[2] This lien was for non-payment of the assessments and fees.

In accordance with the decision made by the unit owners at the annual meeting, the Board sent a September 16, 2004 letter to Weary, informing him that the unit owners agreed on a special assessment not to exceed $80,000.00 to renovate the parking lot and that each unit owner was responsible for the individual unit owner's proportionate share according to the unit owners' common interests. (*Id.*) Weary was assessed a total of $3,162.90, which included the amounts of assessment for separate condominium units. (J.A. at 91-93.) Another letter, dated July 27, 2005, was sent by the Board, informing the unit owners that payment for a special assessment for windstorm and fire insurance would be required. (J.A. at 97.) Weary failed to comply with the Board's requests for payment of the special assessments.

On February 9, 2006, Long Reef filed a Complaint against Weary in the Superior Court, seeking money owed in the amount of $4,314.98 and foreclosure of a lien that was recorded against Weary's condominium unit because of his non-payment of assessed fees. (J.A. at 1.) Weary filed an Answer to the Complaint on March 13, 2006. On January 3, 2007, Long Reef filed a Motion for Summary Judgment, which Weary opposed after the litigants had completed certain pre-trial discovery. On February 19, 2008, the trial court held a hearing on the Motion for Summary Judgment, heard arguments from both parties, and orally granted judgment to Long Reef. This judgment was memorialized in an Order dated February 28, 2008. On March 27, 2008, Weary appealed the trial court's Order.

## II. JURISDICTION AND STANDARD OF REVIEW

■ Title 4, section 32(a) of the Virgin Islands Code vests this Court with jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court. The Superior Court entered a final order in this matter on February 28, 2008; therefore, we have jurisdiction to hear this appeal. *See, e.g., Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012) (judgment is final for appeal purposes where it "disposes of all of the claims submitted to the Superior Court for adjudication").

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010); *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d

Cir. 2008). This Court exercises plenary review of a Superior Court's grant of summary judgment. *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008); *Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32, 43 V.I. 361 (3d Cir. 2001).

Summary judgment should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits confirm that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. When reviewing the record, this Court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party, and we must take the nonmoving party's conflicting allegations as true if supported by proper proofs. This Court may not itself weigh the evidence and determine the truth; rather, we decide only whether there is a genuine issue for trial such that a reasonable jury could return a verdict for the non-moving party. *Williams*, 50 V.I. at 194-95; *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011).

## III. DISCUSSION

### A. The trial court did not err in granting Long Reef's Motion for Summary Judgment.

Weary argues that the trial court erroneously granted Long Reef's Motion for Summary Judgment because the parking lot charges and the windstorm and fire insurance charges were not assessed in accordance with Long Reef's By-Laws. (Appellant's Br. 7.) Regarding the parking lot assessment, Weary argues that the "$80,000 parking lot assessment vote was not conducted properly with the two divisions of mortgage holders and non-mortgage holders . . . ." (Appellant's Br. 10.) On the windstorm and fire insurance assessment, Weary argues that according to the By-Laws, the Board was first required to do an appraisal of the property to determine the amount necessary to purchase windstorm and fire insurance and then publish the breakdown or the details of the insurance amounts assessed to the owners. (J.A. at 10.) Weary asserts that neither of these procedures had been followed before the Board issued either the parking lot assessments or the windstorm and fire insurance assessments.

Weary raises various other issues concerning the manner in which Long Reef's Board of Directors and other individuals associated with Long Reef conducted or are now conducting business on behalf of Long

Reef's condominium owners. However, those issues were not raised in the trial court as independent claims, counterclaims, or defenses and were not contemplated in the trial court's final judgment. *See* V.I.S.Cᴛ.R. 22(m) ("Issues that were . . . not raised or objected to before the Superior Court . . . are deemed waived for purposes of appeal . . ."). Therefore, we will only address those issues which are appropriately before this Court.[3]

### 1. Parking Lot Assessment

Weary's argument that the parking lot fees were not properly assessed according to the By-Laws has no support in the trial record. Weary contends that under Article V, Section 12 of Long Reef's By-Laws, a two-thirds vote of the unit owners is required to ratify a proposal for improvements and that two-thirds of the unit owners did not approve the proposal to renovate the parking lot before the Board issued the assessments. Article V, Section 12 provides:

**Section 12. ADDITIONS, ALTERATIONS OR IMPROVE-MENTS BY BOARD OF DIRECTORS**

Whenever in the judgment of the Board of Directors the common areas and facilities shall require additions, alterations or improvements costing in excess of $10,000.00 and the making of such additions, alterations and improvements shall have approved by the vote of at least two-thirds (2/3) in number and in common interest of the unit owners and by those mortgagees holding mortgages constituting first liens upon two (2) or more apartment units. . .

(J.A. at 56.) The trial court noted that Section 12 specifically applies to actions emanating from the "judgment of the Board of Directors." However,

---

[3] Weary asserts that the assessments were not levied in accordance with the By-Laws. However, this argument has little development in Weary's *pro se* brief before this Court. More detail concerning this argument can be found in the trial transcript during a colloquy between Weary's former counsel and the trial court. (J.A. at 10.) Nevertheless, appellate courts typically exercise some degree of leniency toward *pro se* litigants who lack formal legal training since they are typically not conversant with the rules governing appeals. *See Kutska v. California State College,* 564 F.2d 108, 111 (3d Cir. 1977).

the parking lot assessment was initiated at an owners meeting by one of the condominium owners — not by anyone purporting to act for the Board — and was approved by at least the majority of the owners then in attendance. Section 12 is directly implicated only under the circumstances where Long Reef's Board members convene in a directors' meeting, decide to impose assessments, and subsequently inform the condominium owners of that decision. Under that circumstance, the Board would need approval by at least a two-thirds majority of the unit owners in attendance, and by those mortgagees holding mortgages constituting first liens on two or more apartment units, to be in compliance with Section 12.

However, those are not the circumstances in this case. The condominium By-Laws further state in Article III, Section 11:

### Section 11. MAJORITY VOTE

The vote of a majority of unit owners at a meeting at which a quorum shall be present shall be binding upon all unit owners for all purposes except were (sic) in the Declaration or these By-Laws the higher percentage vote is required.

(J.A. at 49.) The August 7, 2004 meeting at which the assessments in dispute were passed, was a meeting held by the unit owners and not the Board.[4] The minutes of the August 7, 2004 meeting confirm that a quorum of qualified owners was present as required by the By-Laws. (J.A. at 89.) A motion was made by a unit owner to authorize the Board to impose the parking lot assessments and the motion was passed. (J.A. at 89-90.) The pertinent portion of the minutes confirming the parking lot assessments is as follows:

Parking lot project — there is a definite need for major parking lot repairs, including survey, paving, fencing, relocation of dumpster. A special assessment will be necessary for this project. Homeowners decided to vote on this issue. Motion was made and carried as follow: the Board can assess fees to re-do and fence the parking lot at a cost of up to $80,000. Anything over $80,000.00 will require approval by the homeowners association.

(J.A. at 89.) While there is no record of an exact count on how many owners voted for or against the assessment, an approved or carried motion indicates

---

[4] Significantly, the August 7, 2004 meeting minutes indicate that a board meeting was held after the unit owners meeting. (J.A. at 90.)

that at least a majority of the owners present voted in favor of the assessment.[5] Article III, Section 9 of the By-Laws provides:

### MAJORITY OF UNIT OWNERS

As used in these By-Laws the term "Majority of unit owners" shall mean those unit owners having more than 50% of the total authorized votes of all unit owners present in person or by proxy and voting at any meeting of the unit owners, determined in accordance with the provisions of section 7 of this article III.

(J.A. at 49.) The provision of Article V, Section 12 of the By-Laws only addresses actions taken by the Board and does not implicate actions taken by individual unit owners at an owners meeting — whereas, Article III, Section 11 refers to the binding authority of actions taken by unit owners at a unit owners meeting.

The party who moves for summary judgment has the burden in proving that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once that burden is met, as in this case, the burden shifts to the non-movant to present evidence of a genuine issue of material fact. To satisfy this burden on a properly pled summary judgment motion, the non-movant may not rest on its pleadings or offer mere allegations or denials, but must come forward with other evidence, by affidavit or otherwise. *See Celotex*, 477 U.S. at 324; *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). Without some extrinsic evidence that Article V, Section 12 should be interpreted otherwise, we cannot impute owner-initiated activities to Article V, Section 12 which explicitly pertains to the Board of Directors. Weary simply failed to submit any evidence in the trial court that would create a genuine issue of material fact on his liability for the proposed assessments. Significantly, Weary has not submitted any evidence indicating that the assessment was proposed by the Board of Directors as opposed to the unit owners or that the vote was not passed by a majority at the owners' meeting.

■ The language of both Sections 11 and 12 of the By-Laws is clear and unambiguous; therefore, we will follow their plain meaning and

---

[5] ROBERT'S RULES OF ORDER 41-42 (General Henry M. Robert ed., Morrow Quill, 1971).

abstain from imputing language or interpretations that are not in accordance with their plain meaning. *See, e.g., Singh v. Singh*, 114 Cal. App. 4th 1264, 9 Cal. Rptr. 3d 4, 27-28 (2004) (corporate bylaws are to be construed according to the general rules governing the construction of statutes and contracts); *TruServ Corp. v. Bess Hardware & Sports, Inc.*, 346 Ill. App. 3d 194, 804 N.E.2d 611, 618 (2004) (corporation's bylaws are construed according to rules used to interpret statutes, contracts, and other written instruments); *Isaacs v. American Iron & Steel Co.*, 690 N.W.2d 373, 376 (Minn. Ct. App. 2004) (corporation's by-laws establish rules of internal governance, which, like contracts and statutes, are construed according to their plain meaning within the context of the document as a whole).[6] We are mindful that both condominium associations and corporations have by-laws[7] for many purposes, including for their internal governance and management of their affairs. Therefore, we conclude that the legal precedent on by-laws should be equally applicable to both corporations and condominium associations and not be treated differently. Therefore, we find no error in the trial court's ruling that there was no genuine issue of material fact concerning whether Weary was obligated to pay for the parking lot assessment.

### 2. Insurance Assessment

Likewise, Weary argues that the windstorm and fire insurance charges were improperly assessed because the Board did not conduct an appraisal of the property prior to assessing the fees. Weary cites to Article V, Section 2 of the By-Laws, which states that "prior to obtaining any policy of fire insurance or any renewal thereof, the Board of Directors shall obtain a qualified appraisal of the full replacement value of the building . . . ." (J.A. at 52.) However, Weary did not submit any evidence, other than his own unsupported assertions, contending that the insurance proceeds were not assessed according to the By-Laws. It is well established that mere assertions are not sufficient to survive a motion for summary judgment. *See Bright v. United Corp.*, 50 V.I. 215, 222-23 (V.I.

---

[6] Long Reef's Declaration establishes that Long Reef is a corporation organized and existing under the laws of the Virgin Islands.

[7] A by-law is defined as "[a] rule or administrative provision adopted by an organization for its internal governance and its external dealings." BLACK'S LAW DICTIONARY 228 (9th ed. 2009).

2008) (citing *Celotex Corp.*, 477 U.S. at 324); *see also Tusing v. Des Moines Independent Community School Dist.*, 639 F.3d 507, 514 (8th Cir. 2011); *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). Therefore, we find that Weary's unsupported assertion did not demonstrate a genuine issue of material fact regarding the windstorm and fire insurance assessment. Importantly, no sworn statement or affidavit, no deposition, and no answers to interrogatories were found in the record before us which support Weary's contention on the insurance assessment issue.

Furthermore, neither Virgin Islands law nor Long Reef's Declaration and By-Laws supports a unit owners' independent decision to withhold payment of common charges in an attempt to force the Condominium Association to perform its duties. *See Towers Condo. Ass'n v. Lawrence*, 32 V.I. 185, 188 (V.I. Terr. Ct. 1995) ("No apartment owner may exempt himself from liability for his contribution towards the common expenses by waiver of the use or enjoyment of any of the common areas and facilities or by abandonment of his apartment.") (quoting 28 V.I.C. § 920). The Virgin Islands Code provides in title 28, section 906:

**906. Compliance with covenants, bylaws and administrative provisions**

Each apartment owner shall comply strictly with the bylaws and the administrative rules and regulations adopted pursuant thereto, as either of the same may be lawfully amended from time to time, and with the covenants, conditions and restrictions set forth in the declaration or in the deed to his apartment. Failure to comply with any of the same shall be ground for an action to recover sums due, for damages or injunctive relief or both maintainable by the manager or Board of Directors on behalf of the Association of Apartment Owners or, in a proper case, by an aggrieved apartment owner.

Also, Section 21(B) of Long Reef's Declaration provides:

No owner of a condominium unit may exempt himself from liability for any assessment levied against such owner and his condominium unit by waiver of the use or enjoyment of any of the common areas and facilities or by abandonment of the condominium unit or by any other means.

(J.A. at 72.)

■ These provisions explicitly prohibit unit owners from withholding payment of common assessments for any reason. Further, we are unable to find any provision in the Virgin Islands Condominium Act, Long Reef's Declaration, or Long Reef's By-Laws which creates a nonpayment exemption for unit owners. Thus, the payment of common charges is mandatory without any exceptions and is independent of any of Long Reef's duties. *Lawrence*, 32 V.I. at 188. If Weary has a cause of action against Long Reef for the grievances he alleges on appeal, there are more appropriate avenues he can undertake to seek redress for these grievances — i.e. filing a complaint. However, refusing to pay the assessments or other self-help techniques that are not covered in the statutes are not justifiable. *See, e.g., Rivers Edge Condo. Ass'n v. Rere, Inc.*, 390 Pa. Super. 196, 568 A.2d 261, 263-64 (1990) (rejecting unit owner's non-payment of assessment self-help approach and upholding statute's requirement that where that unit owner believes that an association has been negligent or has breached a contractual obligation, the unit owner may institute a legal action against the association).

Additionally, Article V, Section 4 of the By-Laws states that "all unit owners shall be obligated to pay the common charges assessed by the Board of Directors pursuant to the provisions of Section 1 of this Article V at such time or times as the Board of Directors shall determine." (J.A. at 53.) For those unit owners who fail to pay the Board's assessment, this provision grants the Board of Directors the authority to "take prompt action to collect charges due from any unit owner which remains unpaid for more than thirty (30) days from the date the payment is due." (J.A. at 54.)

## IV. CONCLUSION

Based on the record, there is no genuine issue of material fact regarding whether Weary was obligated to pay both the parking lot repairs assessment and the windstorm and fire insurance assessment. Weary had an absolute obligation to pay his portion of the common charges. Therefore, the February 28, 2008 Order of the Superior Court granting Long Reef's Motion for Summary Judgment is affirmed.

HODGE, *Chief Justice*, concurring in part and dissenting in part. Although I agree with the majority's conclusion that the Superior Court did not err in granting Long Reef's motion for summary judgment in regards to the insurance assessment, I write separately because I believe

it was error to grant summary judgment on the parking lot assessment issue.

Weary presented evidence that the parking lot assessment was not properly adopted under the provisions of Article V, Section 12 of Long Reef's By-Laws, which requires additions, alterations or improvements to common areas in excess of $10,000 to be approved by "at least two-thirds (2/3) in number and in common interest of the unit owners and by those mortgagees holding mortgages constituting first liens upon two (2) or more apartment units." Long Reef argued that the requirements of Section 12 were not applicable here because that provision deals with assessments for common area improvements brought forth by *the board of directors*, while the parking lot assessment was adopted by the *homeowners*. Instead, Long Reef contended that the applicable By-Laws provision was Article III, Section 11, under which the assessment only needed the vote of a majority of unit owners at a meeting at which a quorum was present. Long Reef additionally proffered the minutes of its annual meeting, which indicate that on August 7, 2004, a homeowner's meeting was called to order, roll call was taken, and a quorum of qualified owners was present. (J.A. at 89.) The minutes further indicate that during the meeting the issue of the need for a parking lot assessment of $80,000 was discussed, the homeowners decided to vote on the issue, and the motion was made and carried.[1] (J.A. at 89-90.) The trial court concluded that Section 11, not Section 12, of the By-Laws was applicable, and that the parking lot assessment only required the vote of a majority of unit owners at a meeting at which a quorum was present. The trial court further concluded that the minutes of Long Reef's annual meeting clearly establish that the parking lot assessment was properly adopted by the homeowners under Article III, Section 11. Thus, the trial court granted Long Reef's motion for summary judgment in regards to the parking lot assessment.

According to Section 11, "[t]he vote of a majority of unit owners at a meeting at which a quorum shall be present shall be binding upon all unit owners for all purposes *except where in the Declaration or these By-Laws the higher percentage vote is required.*" (Emphasis added.) While the majority is correct that Section 11 is applicable, it incorrectly concludes

---

[1] There is no indication from the minutes, or any other evidence in the record, what percentage of the homeowners were present at this meeting or how many of them voted for the parking lot assessment.

that the parking lot assessment, which exceeded $10,000, only required approval by a majority of unit owners at a meeting at which a quorum was present. Rather, the parking lot assessment at issue in this case is a situation where the By-Laws require a higher percentage vote. As Weary points out, Article V, Section 12 of Long Reef's By-Laws requires approval of "at least two-thirds (2/3) in number and in common interest of the unit owners and by those mortgagees holding mortgages constituting first liens upon two or more apartment units" in order to make additions, alterations or improvements in excess of $10,000 to common areas. Although Section 12 speaks specifically to additions, alterations or improvements initiated by the board of directors, it is illogical to conclude that a smaller percentage of the homeowners could circumvent this higher approval requirement by bringing forth these assessments themselves for the board to implement — as opposed to initiating them through the board of directors. *See* RESTATEMENT (SECOND) OF CONTRACTS § 202(2) (1981) ("A writing is interpreted as a whole . . . ."); *see also Oberbillig v. West Grand Towers Condominium Ass'n*, 807 N.W.2d 143, 150 (Iowa 2011) (holding that a condominium association's Declaration and By-Laws must be construed as a whole); *Carney v. Donley*, 261 Ill. App. 3d 1002, 633 N.E.2d 1015, 1020 (1994) (same).[2]

For example, assume that the board of directors desired to make improvements to the common areas in excess of $10,000, but failed to secure the approval of two-thirds in number and in common interest of the unit owners and mortgagees holding mortgages constituting first liens upon two or more apartment units. A simple majority of the homeowners could, within as brief a period as ten days, effectively override this failed assessment by calling a meeting of the unit owners and adopting this same assessment.[3] In fact, since Long Reef's By-Laws require the board of directors to be comprised of unit owners, under the majority's holding, the board of directors could completely avoid obtaining the approval

---

[2] Since the articles of incorporation and By-Laws create a contractual relationship between the parties, we apply the general rules for contracts to construe an Association's governing documents. *See* RESTATEMENT (THIRD) OF PROPERTY § 4.1; *see also Oberbillig*, 807 N.W.2d at 150-51.

[3] This same hypothetical assessment could be adopted by the approval of a majority of unit owners at a meeting at which a quorum of unit owners is present, which theoretically would be as few as just over one-sixth of the unit owners since, under the By-Laws, a quorum is defined as one-third of the unit owners.

174

required under Section 12 by bringing forth proposals for such assessment in their individual capacity as unit owners at homeowner meetings, which could be approved by a majority of a quorum of unit owners as opposed to the higher percentage vote required under Section 12. These examples illustrate why a proper interpretation of Long Reef's By-Laws as a whole clearly shows that they require approval of "at least two-thirds (2/3) in number and in common interest of the unit owners and by those mortgagees holding mortgages constituting first liens upon two or more apartment units" in order to make additions, alterations or improvements in excess of $10,000 to common areas, regardless of whether initiated by the board of directors or a homeowner. To conclude otherwise, as the majority does, effectively nullifies Section 12's higher percentage vote requirement for assessments for additions, alterations or improvements in excess of $10,000 to common areas. Any such reading which renders contract provisions pointless, superfluous, or ineffective violates basic notions of contract interpretation,[4] and leads to an absurd result which should not be entertained. *See Ins. Office of Am., L.L.C. v. HI Insulation, L.L.C.*, 462 Fed. Appx. 434, 435 (5th Cir. 2012) (reversing entry of summary judgment where the lower court's interpretation of the governing document led to an absurd result). Accordingly, since there was a genuine issue as to whether the parking lot assessment was approved by at least two-thirds in number and in common interest of the unit owners and mortgagees holding mortgages constituting first liens upon two or more apartment units, as required by Article V, Section 12 of Long Reef's By-Laws, I would conclude that the trial court erred in granting Long Reef's motion for summary judgment with regards to the parking lot assessment. For these reasons, I respectfully dissent from this Court's affirmance of the parking lot assessment.

---

[4] *See In re Shared Memory Graphics LLC*, 659 F.3d 1336, 1341 (Fed. Cir. 2011) (holding court has a duty to be "careful to avoid an interpretation that would render any part of the [instrument] superfluous") (citing *Wagner v. Wagner*, 95 Wn.2d 94, 621 P.2d 1279, 1283 (1980)); RESTATEMENT (SECOND) OF CONTRACTS § 203(a) & cmt. b (1981) ("Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous."). An interpretation of a writing which gives effect to all of its provisions is favored over one which "renders some of the language meaningless or ineffective." *Newsom v. Miller*, 42 Wn.2d 727, 258 P.2d 812, 814 (1953).