**NASHVILLE PHILLIP, Appellant/Defendant**
**v.**
**WILMA MARSH-MONSANTO, Appellee/Plaintiff**

S. Ct. Civil No. 2015-0040

Supreme Court of the Virgin Islands

May 30, 2017

CLIVE C. RIVERS, ESQ., Law Offices of Clive Rivers, St. Thomas, USVI, *For Appellant.*

WILMA MARSH-MONSANTO, St. Thomas, USVI, *Pro se.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(May 30, 2017)

CABRET, *Associate Justice.* Nashville Phillip appeals the Superior Court's May 8, 2015 judgment awarding Wilma Marsh-Monsanto $16,320.84 under a November 21, 2011 contract of sale for real property in St. Thomas. Because the Superior Court erred in interpreting and applying Marsh-Monsanto's pleadings in this case, and erred in awarding her damages under an alleged separate "gentleman's agreement" to pay more money for the property, which — as a matter of law — was unenforceable in light of the merger language of the operative sales contract, we vacate the judgment and remand this matter with directions for dismissal of Marsh-Monsanto's complaint with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 17, 2011, Marsh-Monsanto and Phillip entered into a contract of sale for Parcel No. 332-B and Remainder 332-B Estate Wintberg, St. Thomas. Under that contract, Phillip agreed to pay Marsh-Monsanto $140,000 for the property, subject to the precondition that he obtain a $135,000 mortgage loan to finance the purchase. Phillip made an initial $5,000 deposit, but was unable to obtain the required $135,000 mortgage loan because his bank appraised the property at $110,000.

Phillip then informed Marsh-Monsanto that he was unable to obtain the intended mortgage loan, and on November 21, 2011, they entered into a second contract of sale for the same property. That second contract reduced the sale price for the property to $110,000, but otherwise included most of the same terms as the first contract.

In January 2012, the parties closed the sale. Marsh-Monsanto signed a warranty deed in Phillip's favor, and received the $110,000 purchase price under the second contract. After the sale, however, Marsh-Monsanto repeatedly contacted Phillip to obtain additional money under a promissory note relating to the same property. Phillip disputed signing a promissory note and considered the repeated contacts harassment, but nonetheless made an additional $1,000 payment before leaving St. Thomas to visit his family. When Phillip left, Marsh-Monsanto approached her long-time acquaintance and Phillip's girlfriend, Maureen Jackson, to obtain the additional money. Jackson, who had witnessed the parties sign the first contract, was familiar with the terms of sale of that contract. Nonetheless, before making any payments to Marsh-Monsanto, Jackson first attempted to get in touch with Phillip to determine whether he still owed money for the property. Unable to reach Phillip and unaware of the existence of the second contract, Jackson made a number of payments to Marsh-Monsanto on his behalf in 2012. Later, when Phillip returned to St. Thomas, he notified Jackson that he did not owe any money for the property, and Jackson stopped all payments to Marsh-Monsanto.

On May 7, 2014, Marsh-Monsanto filed suit in Superior Court seeking $22,500 owed under the terms of a signed November 21, 2011 promissory note. Marsh-Monsanto alleged that under the terms of the promissory note, Phillip agreed to pay her $25,000 in $500 monthly installments for the property, but had only made three payments: $1,000 on May 3, 2012, $500 on July 24, 2012, and $1,000 on July 26, 2012. The Superior Court held a bench trial on March 6, 2015, and heard testimony from Marsh-Monsanto, Phillip, and Jackson.

During her case-in-chief, Monsanto called Jackson and questioned her at length about Plaintiff's Exhibit 1, a photocopy of eight payment receipts dated between February and October 2012. Jackson testified to making and recording a number of the payments included in Plaintiff's Exhibit 1, explaining that she did not know about the second contract and as a result, believed Phillip owed Marsh-Monsanto additional money

under the first contract. Jackson also explained that, when recording her payments in the written receipts, Marsh-Monsanto had provided the "amount due" figures included on each receipt, which ranged from $30,000 to $25,500.

Marsh-Monsanto testified and admitted to entering into the second contract and receiving the $110,000 purchase price, but claimed that she and Phillip had also entered into a separate, earlier agreement, which she alternatively described as a "gentleman's agreement" and as a "letter." She explained that under the terms of that agreement, Phillip agreed to pay her the $30,000 difference in purchase price between the first and second contracts in $500 monthly installments. She further explained that the $22,500 sum sought in her complaint represented the $30,000 balance minus Phillip's initial $5,000 deposit and $2,500 in subsequent payments. Although she claimed the agreement was in writing, she did not produce it at trial, instead relying on the "amount due" indicated on the payment receipts included in Plaintiff's Exhibit 1. When questioned by the court about the written agreement's absence, she stated that she had mailed it to Phillip.

After Marsh-Monsanto rested, Phillip erroneously moved for a "directed verdict" instead of a motion for judgment on partial findings,[1] arguing that Marsh-Monsanto had not established that the alleged promissory note was an enforceable agreement because she did not produce it at trial. The Superior Court denied Phillip's motion, explaining that there was no evidence that Marsh-Monsanto had received the purchase price under either the first or the second contract. The court did not, however, address the missing promissory note. When Phillip testified in his defense, he admitted to entering into the second contract, but denied

---

[1] At the time of bench trial, a motion made at the close of a plaintiff's case-in-chief was properly entitled a motion for judgment on partial findings. *Hodge v. McGowan*, 50 V.I. 296, 306 & n.5 (V.I. 2008); *see Sec'y of Labor v. Doyle*, 675 F.3d 187, 199 n.28 (3d Cir. 2012) (evaluating "the court's [directed verdict] decision as a ruling on partial findings of fact" (citation omitted)); *Fed. Ins. Co. v. HPSC, Inc.*, 480 F.3d 26, 32 (1st Cir. 2007) ("[W]e treat motions for judgment as a matter of law made during bench trials as motions for judgment on partial findings[.]" (citations omitted)); *Williams v. Mueller*, 13 F.3d 1214, 1215 (8th Cir. 1994) (same); *Ex parte Wood*, 69 So. 3d 166, 169 n.3 (Ala. 2010) (same); *Krafczik v. Morris*, 2009 WY 53, 206 P.3d 372, 381 n.4 (Wyo. 2009) (same). We note that under Promulgation Order 2017-0001, 2017 V.I. Supreme LEXIS 22, Rule 50(a) of the Virgin Islands Rules of Civil Procedure now provides that this procedure will be in the form of a motion for judgment as a matter of law, made after a party has been fully heard on a matter.

agreeing to pay the $30,000 difference in sale price between the first and second contracts. He testified that he had fully paid Marsh-Monsanto the $110,000 purchase price under the second contract, including an initial $5,000 deposit, an $88,679.16 check at closing, and unpaid taxes due on the property. He also testified that, shortly after the sale, Marsh-Monsanto approached him and demanded that he "be a man" and pay the $30,000 difference in purchase price between the first and second contracts. When he refused additional payment, Marsh-Monsanto contacted his employer, employees, and other members of the community, and at one point, even shouted at him from the street when he was clearing the land. Although Phillip considered Marsh-Monsanto's conduct harassment, he nonetheless had "had enough of that," and made an additional $1,000 payment before leaving St. Thomas to visit his family in the United Kingdom.

The Superior Court issued an oral ruling on April 16, 2015. The Superior Court held that the parties were bound under the second contract, and found that Phillip had paid Marsh-Monsanto $93,679.16 — an $88,679.16 check and a $5,000 deposit — toward the $110,000 purchase price. As a result, the Superior Court concluded that Phillip owed $16,320.84 to Marsh-Monsanto under the second contract. On May 8, 2015, the Superior Court entered its judgment. Phillip filed a timely notice of appeal.[2]

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." V.I. CODE ANN. tit. 4, § 32(a). Because the Superior Court's May 8, 2015 judgment disposed of all claims submitted to the court for adjudication, it was a final order, and we have jurisdiction over this appeal. *Malloy v. Reyes*, 61 V.I. 163, 171 (V.I. 2014) (citing *Chapman v. Cornwall*, 58 V.I. 431, 436 (V.I. 2013)).

## III. DISCUSSION

Phillip argues that the Superior Court erred by denying his motion for judgment on partial findings because Marsh-Monsanto did not

---

[2] The Superior Court signed its written judgment on May 7, 2015, and entered it on May 8, 2015. Although Phillip prematurely filed his appeal on May 7, 2015, we nonetheless treat it as if it was filed "on the date of and after the entry" of the judgment and consider it timely filed. V.I.S.CT.R. 5(a)(1).

demonstrate the first element of her breach of contract claim — an enforceable agreement — explaining that Marsh-Monsanto failed to produce a signed promissory note at trial.[3] Because Phillip put on evidence in his own case-in-chief after his motion was denied, we consider "all of the evidence" in evaluating the court's decision. *Ne. Drilling, Inc. v. Inner Space Servs., Inc.*, 243 F.3d 25, 37 (1st Cir. 2001).[4] We apply plenary review to the Superior Court's application of law and review its factual findings for clear error. *Malloy*, 61 V.I. at 173 (citing *Brunn v. Dowdye*, 59 V.I. 899, 904 (V.I. 2013)). A factual finding is clearly erroneous if it either is completely devoid of minimum evidentiary support, or bears no rational relationship to the supportive evidentiary data. *In re D.A.B.*, 63 V.I. 623, 627 (V.I. 2015) (citing *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 695 (V.I. 2015)).

■ Before we address the merits of Phillip's argument, however, we must first establish the very element he seeks to challenge. This Court has not yet addressed the elements of a breach of contract claim under the analysis outlined in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011). When addressing issues of Virgin Islands common law, we must engage in a three-factor analysis: examine which common law rule Virgin Islands courts have applied historically; identify the majority rule adopted in other jurisdictions; and most importantly, determine which common law rule is soundest for the Virgin Islands. *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014).

---

[3] Phillip did not assert an affirmative defense under the Virgin Islands Statute of Frauds. As a result, that defense is waived. *See* SUPER. CT. R. 32(b) ("Answers shall comply with Rules 8 and 9 of the Federal Rules of Civil Procedure."); FED. R. CIV. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of frauds[.]"); *Jewelers Mut. Ins. Co. v. N. Barquet, Inc.*, 410 F.3d 2, 11 (1st Cir. 2005) (explaining that a defendant's failure to raise a statute of frauds defense within its answer constituted waiver under the circumstances); *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1122-23 (7th Cir. 1998) (same); *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 547 (6th Cir. 1981) (same).

[4] *Accord Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 451 n.29 (7th Cir. 2006) ("reviewing the [trial] court's [motion for judgment on partial findings] order [by] evaluating the record as a whole"); *Nieto v. Kapoor*, 268 F.3d 1208, 1217 (10th Cir. 2001) (same); *Duval v. Midwest Auto City, Inc.*, 578 F.2d 721, 724 (8th Cir. 1978) (same); *Sears Roebuck & Co. v. Bd. of Tax Review of the Town of W. Hartford*, 241 Conn. 749, 699 A.2d 81, 86 (1997) (same); *PACCAR Fin. Corp. v. Howard*, 615 So. 2d 583, 586-87 (Miss. 1993) (same); *Citrini v. Goodwin*, 68 N.C. App. 391, 315 S.E.2d 354, 360-61 (1984) (same); *Ballard v. Rickabaugh Orchards, Inc.*, 259 Ore. 200, 485 P.2d 1080, 1082 (1971) (same).

■■ Courts in the Virgin Islands have historically recognized four elements underlying a claim for breach of contract: (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages. *See Davis v. Ragster*, 49 V.I. 932, 941 (D.V.I. 2008); *F.D. Rich Hous. of the V.I., Inc. v. Gov't of the V.I.*, 17 V.I. 410, 433-34 (D.V.I. 1980); *Goddard's Ltd. v. Bank of Nova Scotia*, 255 F. Supp. 58, 59, 5 V.I. 376 (D.V.I. 1966); *Fleming v. Hagemann*, 1 V.I. 32, 36-37 (D.V.I. 1923); *Merchs. Commercial Bank v. Oceanside Vill., Inc.*, 64 V.I. 3, 14-15 (V.I. Super. Ct. 2015); *Roebuck v. V.I. Hous. Auth.*, 60 V.I. 137, 144 (V.I. Super. Ct. 2014); *RC Hotels (V.I.), Inc. v. B & T Cook Family Partners, Ltd.*, 57 V.I. 3, 9 (V.I. Super. Ct. 2012); *Marcano v. Cowpet Beach Resort, Inc.*, 31 V.I. 99, 104 (V.I. Super. Ct. 1995). This Court, in a series of cases, has also recognized these four elements. *See Brouillard v. DLJ Mortg. Capital, Inc.*, 63 V.I. 788, 797-98 (V.I. 2015); *Pollara v. Chateau St. Croix, LLC*, 58 V.I. 455, 473 (V.I. 2013); *Chapman v. Cornwall*, 58 V.I. 431, 437 (V.I. 2013); *Rainey v. Hermon*, 55 V.I. 875, 881 (V.I. 2011); *United Corp. v. Tutu Park Ltd.*, 55 V.I. 702, 707 (V.I. 2011); *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 134-35 (V.I. 2009), *overruled in part on other grounds by Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 564 (V.I. 2012). Moreover, these elements are recognized in a majority of other jurisdictions.[5] In light of this consistency between case law in the

---

[5] *See, e.g., Emps.' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 975 (Ala. 1998); *Am. Computer Inst., Inc. v. State*, 995 P.2d 647, 651 (Alaska 2000); *Ark. Realtors Ass'n v. Real Forms, LLC*, 2014 Ark. 385, 442 S.W.3d 845, 852 (2014); *San Mateo Union High Sch. Dist. v. Cnty. of San Mateo*, 213 Cal. App. 4th 418, 152 Cal. Rptr. 3d 530, 548 (2013); *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992); *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 87 A.3d 534, 540 (2014); *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009); *Brown v. Guinn*, 970 N.E.2d 192, 196 (Ind. Ct. App. 2012); *Berryhill v. Hatt*, 428 N.W.2d 647, 652 (Iowa 1988); *Stechschulte v. Jennings*, 297 Kan. 2, 298 P.3d 1083, 1098 (2013); *Woody v. Tamer*, 158 Mich. App. 764, 405 N.W.2d 213, 216-17 (1987); *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014); *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010); *Murphy v. Implicito*, 392 N.J. Super. 245, 920 A.2d 678, 689 (App. Div. 2007); *Pillsbury v. Blumenthal*, 1954-NMSC 066, 58 N.M. 422, 272 P.2d 326, 329 (1954); *Poor v. Hill*, 138 N.C. App. 19, 530 S.E.2d 838, 845 (2000); *WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, 730 N.W.2d 841, 848 (2007); *Lawrence v. Lorain Cnty. Cmty. Coll.*, 127 Ohio App. 3d 546, 713 N.E.2d 478, 480 (1998); *Lincoln Farm, L.L.C. v. Oppliger*, 2013 OK 85, 315 P.3d 971, 977 (2013); *Kantor v. Boise Cascade Corp.*, 75 Ore. App. 698, 708 P.2d 356, 359 (1985); *CoreStates Bank, N.A. v. Cutillo*, 1999 PA Super 14, 723 A.2d 1053, 1058 (1999); *Weitzel v. Sioux Valley Heart Partners*, 2006 SD 45, 714 N.W.2d 884, 894 2006); *Crown Asset Mgmt., L.L.C. v. Loring*, 294 S.W.3d 841, 848 (Tex. App. 2009); *Ulloa v. QSP, Inc.*, 271 Va. 72, 624 S.E.2d 43, 48 (2006); *Jacob's*

Virgin Islands and that of other jurisdictions, we adopt these elements as the soundest path forward because they comport with the underlying purpose of contract law, which is to hold parties to their agreements so that they receive the benefit of their bargains. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 28 Cal. Rptr. 2d 475, 869 P.2d 454, 460 (1994) ("[I]n the law of contracts the theory is that the party injured by breach should receive as nearly as possible the equivalent of the benefits of performance." (citations and internal quotation marks omitted)); *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 592 N.W.2d 201, 206 (1999) ("The law of contracts is designed to effectuate exchanges and to protect the expectancy interest of parties to private bargained-for agreements." (citation and internal quotation marks omitted)). Therefore, to establish her breach of contract claim, Marsh-Monsanto was required to demonstrate: (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages. *Brouillard*, 63 V.I. at 798 (citing *Arlington Funding Servs.*, 51 V.I. at 135).

Now, with the elements of breach of contract in mind, we evaluate the merits of Phillip's appeal. Phillip's challenge under the first element of Marsh-Monsanto's breach of contract claim is premised on two underlying arguments. First, he argues that the court erred by awarding damages under the second contract, explaining that the court "ignored" undisputed evidence establishing that Marsh-Monsanto received the $110,000 purchase price under that contract, but sought the $30,000 difference in purchase price between the first and second contracts. Second, he argues that the court erred to the extent that it awarded damages under the pleaded promissory note, explaining that Marsh-Monsanto failed to produce a signed note at trial. We address each argument in turn.

### A. The Superior Court's Damages Award under the Second Contract

■ Phillip argues that the Superior Court erred in disregarding undisputed evidence established at trial, including for example, Marsh-

*Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 162 P.3d 1153, 1161 n.3 (2007); *Brew City Redevelopment Grp., LLC v. Ferchill Grp.*, 2006 WI App 39, 289 Wis. 2d 795, 714 N.W.2d 582, 588 (2006); *Reynolds v. Tice*, 595 P.2d 1318, 1323 (Wyo. 1979); *Del Rosario v. Camacho*, 2001 MP 3 ¶ 95, 6 N. Mar. I. 213 (2001).

Monsanto's repeated admissions that she received the $110,000 purchase price under the second contract. Phillip also argues that much of this same evidence establishes that Marsh-Monsanto did not seek damages under the second contract, but instead sought the $30,000 difference in purchase price between the first and second contracts under a different agreement. We interpret this latter argument as a challenge to the court's construction of Marsh-Monsanto's pleadings, which we review for an abuse of discretion. *See Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (reviewing a court's construction of a *pro se* petition for writ of habeas corpus for an abuse of discretion).[6] An abuse of discretion arises when a decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact. *Appleton v. Harrigan*, 61 V.I. 262, 268 (V.I. 2014) (citing *Stevens v. People*, 55 V.I. 550, 556 (V.I. 2011)).

▮ Since Marsh-Monsanto appeared as a *pro se* litigant, we interpret her pleadings and related statements with considerable lenience because of her "lack of formal legal training." *Hughley v. Gov't of the V.I.*, 61 V.I. 323, 330 (V.I. 2014); *accord Weary v. Long Reef Condo. Ass'n*, 57 V.I. 163, 167 n.3 (V.I. 2012) ("[C]ourts typically exercise some degree of leniency toward *pro se* litigants who lack formal legal training[.]"); *Etienne v. Etienne*, 56 V.I. 686, 691 n.5 (V.I. 2012) ("[I]t is our policy to give *pro se* litigants greater leeway in dealing with matters of procedure and pleading." (brackets, citation, and internal quotation marks omitted)). That lenience has limits, however. *See Simpson v. Golden*, 56 V.I. 272, 280 (V.I. 2012) ("[S]elf-representation is not a license [excusing compliance] with relevant rules of procedural and substantive law." (citation and internal quotation marks omitted)). The court may not " 'assume the role of advocate' " or " 'rewrite [pleadings] to include claims that were never presented.' " *Barnett*, 174 F.3d at 1133 (quoting *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998)); *accord Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)

---

[6] *See also United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) (reviewing court's construction of a *pro se* litigant's motion for relief from judgment for abuse of discretion); *In re Jones*, 670 F.3d 265, 267, 399 U.S. App. D.C. 300 (D.C. Cir. 2012) (same); *People v. Smith*, 386 Ill. App. 3d 473, 898 N.E.2d 119, 125, 325 Ill. Dec. 386 (2008) (reviewing court's construction of a *pro se* post-conviction petition for an abuse of discretion); *In re Verizon Wireless Barton Permit*, 188 Vt. 262, 6 A.3d 713, 721 (2010) (reviewing court's construction of *pro se* litigants' filings for an abuse of discretion).

("[R]equiring . . . courts to explore exhaustively all potential claims of a pro se plaintiff . . . would transform the [trial] court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."); *James v. Crews*, 132 So. 3d 896, 899 (Fla. Dist. Ct. App. 2014) ("[L]eniency in construing pleadings does not allow a court to re-draft the substance of a claim because a court cannot assist the pro se litigant to the detriment of the opposing party or to the point that the impartiality of the tribunal can be called into question." (citation and internal quotation marks omitted)). Nor may the court simply disregard a litigant's written pleadings and related statements where that litigant has made the nature of her grievance clear within the context of her action. *See Beaudett*, 775 F.2d at 1278 ("Where the context, as here, makes clear a litigant's essential grievance, the complainant's additional invocation of general legal principles need not detour the . . . court from resolving that which the litigant [herself] has shown to be [her] real concern.").

■ Marsh-Monsanto, throughout the course of this litigation, consistently sought relief under an agreement *different* from the second contract. During trial, she repeatedly conceded that she had received the $110,000 purchase price under the second contract for the property, explaining during court examination that she "let [Phillip] have the deed [for] $110,000 with the stipulation that [he] would pay [an additional] $30,000 in increments." Notwithstanding Marsh-Monsanto's consistent and clear description of her grievance, the Superior Court construed it under the second contract — not under a separate agreement — and awarded her damages. By disregarding Marsh-Monsanto's consistent and clear description of her grievance, the Superior Court, in effect, rewrote her pleadings to include a claim that she did not intend to present. Therefore, the court erred when it awarded Marsh-Monsanto damages under the second contract because it misconstrued her pleadings.

## B. The Superior Court's Damages Award under the Promissory Note

■ Phillip next argues that the Superior Court erred to the extent that it awarded damages under the pleaded promissory note because Marsh-Monsanto failed to produce a signed note at trial. In her complaint, Marsh-Monsanto alleged that Phillip had breached a signed promissory note, which like the second contact, related to the sale of the property and

was dated November 21, 2011. Notwithstanding that allegation, Marsh-Monsanto was unable to produce the agreement at trial, relying instead on the "amount due" indicated on the payment receipts included within Plaintiff's Exhibit 1. When parties enter into multiple written agreements relating to the same subject matter as part of the same transaction, courts consider the meaning of each document and the surrounding circumstances to determine the parties' intent. *Appleyard v. Governor Juan F. Luis Hosp. & Med. Ctr.*, 61 V.I. 578, 585 (V.I. 2014) (collecting cases); *see Mo. Sav. Ass'n v. Home Sav. of Am.*, 862 F.2d 1323, 1326 (8th Cir. 1988) ("The parties' intent regarding the number of documents constituting the contract and the meaning of the contract is determined from the entire instrument or instruments . . . and relevant external circumstances."); *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 107-08 (3d Cir. 1986) ("It is a general rule of contract law that where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole, each one contributing to the ascertainment of the true intent of the parties." (collecting cases)). Contract interpretation, that is, ascertaining the meaning of contractual language, involves mixed questions of law and fact. *United Corp.*, 55 V.I. at 707; *accord Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir. 1985); *Ram Constr. Co. v. Am. States Ins. Co.*, 749 F.2d 1049, 1053 (3d Cir. 1984). If a contract is unambiguous, "the meaning of [its] terms [i]s a question of law." *United Corp.*, 55 V.I. at 707; *accord State ex rel. Parsons v. Fleming*, 68 Ohio St. 3d 509, 1994 Ohio 172, 628 N.E.2d 1377, 1379 (1994). If, however, a contract is ambiguous and extrinsic evidence offered in support of interpretation is disputed, the meaning of the contract's terms is a question of fact. *United Corp.*, 55 V.I. at 708 (citing *White v. Spenceley Realty LLC*, 53 V.I. 666, 679-80 (V.I. 2010)); *accord Houben v. Telular Corp.*, 231 F.3d 1066, 1072 (7th Cir. 2000); *C.R. Anthony Co. v. Loretto Mall Partners*, 1991- NMSC 070, 112 N.M. 504, 817 P.2d 238, 243-44 (1991). Furthermore, "contract construction, that is, the legal operation of the contract, is a question of law mandating plenary review." *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000); *accord Fannie Mae v. F.D.I.C.*, 970 F.2d 484, 485 (8th Cir. 1992); *Huber v. Hovey*, 501 N.W.2d 53, 56 (Iowa 1993).

██ ██ To determine whether a contract is ambiguous, we resort to principles of contract interpretation, keeping in mind that our primary

purpose is to ascertain and give effect to the parties' objective intent. *See United Corp.*, 55 V.I. at 719 n.14 ("[W]hen a court interprets a contract, its task is not to reveal the subjective intentions of the parties, but what their words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used." (brackets, citation, and internal quotation marks omitted)); *TruServ Corp. v. Morgan's Tool & Supply Co.*, 614 Pa. 549, 39 A.3d 253, 260 (2012) ("[W]hen interpreting the language of a contract, this Court's goal is to ascertain the intent of the parties and give it effect."); 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 32:2 (4th ed., rev. vol. 2012) ("[T]he cardinal principle of contract interpretation is that the intention of the parties must prevail unless it is inconsistent with some established rule of law." (collecting cases)). Where the language of a contract is clear and unambiguous, the parties' intent must be derived from the plain meaning of its terms. *See Weary*, 57 V.I. at 169-70 ("The language . . . is clear and unambiguous; therefore, we will follow [its] plain meaning" (collecting cases)); *Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 986 N.E.2d 430, 433, 963 N.Y.S.2d 613 (2013) ("[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms[.]" (citation and internal quotation marks omitted)); 11 WILLISTON ON CONTRACTS § 32:2 ("If the language clearly conveys the parties' lawful intentions, then . . . the court is obligated to enforce the agreement according to its terms."). If the language of a clear and unambiguous contract includes a merger clause, that clause precludes consideration of extrinsic evidence "used to demonstrate an intent that contradicts or adds to the intent expressed in the [contract]."[7] *Nelson v.*

---

[7] Because Marsh-Monsanto did not challenge the validity of the second contract, we decline to address circumstances in which extrinsic evidence may be admissible to demonstrate an intent different from that expressed in the contract. Nevertheless, we note that numerous courts recognize that a merger clause does not bar the introduction of extrinsic evidence amounting to fraud, among other circumstances. *See, e.g., Blackledge v. Allison*, 431 U.S. 63, 75 n.6, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977) ("[E]ven a written contractual provision declaring that the contract contains the complete agreement of the parties, and that no antecedent or extrinsic representations exist, does not conclusively bar subsequent proof that such additional agreements exist and should be given force. . . . [Such a provision] can be set aside by a court on the grounds of fraud, mistake, duress, or on some other ground that is sufficient for setting aside other contracts." (citation and internal quotation marks omitted)); *Infiniti of Mobile, Inc. v. Office*, 727 So. 2d 42, 46 (Ala. 1999) ("[A] merger clause does not bar the admission of parol evidence to prove fraud in the inducement of the contract[.]");

*Elway*, 908 P.2d 102, 107 (Colo. 1995); *see Phillips v. Andrews*, 332 F. Supp. 2d 797, 46 V.I. 233, 244 (D.V.I. App. Div. 2004) ("[E]xpress language within an agreement that specifies the intent of the parties to limit their terms to the agreement must ultimately be given effect."); *Cosgrove v. Mademoiselle Fashions*, 206 Neb. 275, 292 N.W.2d 780, 784-85 (1980) ("When two parties have made a contract and have expressed it in a writing to which they both have assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." (citations and internal quotation marks omitted)); 7 RICHARD A. LORD, WILLISTON ON CONTRACTS § 15:2 (4th ed., rev. vol. 2010) (explaining that a merger clause, "if deemed by the court to reflect the parties' intent that their writing is fully integrated, will have the effect of precluding the introduction of parol evidence to vary or contradict their writing" (citation omitted)).

 In this case, it is evident from the clear and unambiguous language of the second contract that the parties did not intend for the second contract and the pleaded promissory note to form a single agreement. *See Happ v. Corning, Inc.*, 466 F.3d 41, 46 (1st Cir. 2006) (explaining that separate instruments are not interpreted as one contract where such interpretation would "undo plain language which makes perfect sense in context"); 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 30:26 (4th ed., rev. vol. 2012) (explaining that, "two or more agreements, though of a similar nature and made between the same parties, will not be read together when the later one expressly states that

---

*Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, 746 A.2d 1277, 1290 n.14 (2000) ("[E]xtrinsic evidence may be admissible to . . . show mistake or fraud." (citation and internal quotation marks omitted); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 334 (Tex. 2011) ("Pure merger clauses . . . have never had the effect of precluding claims for fraudulent inducement." (collecting cases)); *Tangren Family Trust v. Tangren*, 2008 UT 20, 182 P.3d 326, 330-31 (Utah 2008) ("[E]xtrinsic evidence is appropriately considered, even in the face of a clear integration clause, where the contract is alleged to be a forgery, a joke, a sham, lacking in consideration, or where a contract is voidable for fraud, duress, mistake, or illegality." (citations omitted)); 11 WILLISTON ON CONTRACTS § 33:23 ("[A] merger . . . clause is, with certain limitations, ineffectual to exclude evidence of prior or contemporaneous extrinsic representations for the purpose of showing fraud or other invalidating cause by way of defense or in an action for rescission." (citations omitted)).

it supersedes or annuls the prior one"). Rather, the second contract fully expresses the essential terms of the parties' agreement, including for example, the specific parties, the property, and the purchase price. *See Zurcher v. Herveat*, 238 Mich. App. 267, 605 N.W.2d 329, 336 (1999) (explaining that "a valid contract for the sale of land . . . . must . . . set forth the terms of the agreement with sufficient certainty and definiteness, specifying the identities of the parties and their mutual assent, the property which is the subject of the contract, the price of such property, and the consideration" (citation omitted)); *GMH Assocs., Inc. v. Prudential Realty Grp.*, 2000 PA Super 59, 752 A.2d 889, 900 (Pa. Super. Ct. 2000) (same). The parties' inclusion of these essential terms indicates that they intended for the second contract to contain their entire agreement relating to the sale of the property. *See Harbor Vill. Home Ctr., Inc. v. Thomas*, 882 So. 2d 811, 816 (Ala. 2003) (noting that the inclusion of essential terms in a contract "indicates that the . . . contract is fully integrated"). Moreover, the second contract also includes an unambiguous merger clause, which provides that: "[the second contract] constitutes the *entire agreement* between the parties hereto and no representations, agreements, inducements or provisions other than those expressly set forth herein shall be binding. All changes, additions or deletions to this contract must be in writing and signed by all parties." (Emphasis added.) The parties' inclusion of a merger clause further indicates that they intended for the second contract to contain their entire agreement. *See Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, 746 A.2d 1277, 1291 (2000) ("[T]he parties' insertion of the merger clause[ ] into the . . . agreement[ ] is conclusive evidence of their intent to create [a] fully integrated contract[.]"); *Howard v. Perry*, 141 Idaho 139, 106 P.3d 465, 468 (2005) ("The merger clause . . . proves the agreement is integrated."); *Hoeker v. Dep't of Soc. & Rehab. Servs.*, 171 Vt. 620, 765 A.2d 495, 499 (Vt. 2000) ("The merger clause confirms that the contract is . . . a complete and exclusive statement of the terms of the agreement." (citation and internal quotation marks omitted)). Where, as here, the parties — by their own unambiguous terms — manifest their intent that a writing represent the entire agreement between them, "we will follow [the] plain meaning [of that writing] and abstain from imputing language or interpretations that are not in accordance with [such writing's] plain meaning." *Weary*, 57 V.I. at 169-70; *accord Nelson*, 908 P.2d at 107 (noting that where a "merger clause[] plainly and unambiguously manifest[s] the [parties'] intent[,] . . . it would

be improper for this court to rewrite that transaction by looking to evidence outside the four corners of the contract to determine the intent of the parties"). Under the plain meaning of the second contract, all prior agreements relating to the sale of the property — including the pleaded promissory note — were no longer binding on either party as a matter of law. *See Hoeker*, 765 A.2d at 499 (explaining that a merger clause in a written contract makes "prior agreements covering the same subject matter . . . unenforceable"). Therefore, the court erred when it awarded Marsh-Monsanto damages for breach of contract because her pleaded promissory note is unenforceable under the clear and unambiguous language of the second contract.[8]

## IV. CONCLUSION

The Superior Court erred in denying Phillip's motion for judgment on partial findings because it misconstrued Marsh-Monsanto's pleadings under the second contract and because Marsh-Monsanto's pleaded promissory note is unenforceable under the clear and unambiguous language of the second contract. Therefore, we vacate the Superior Court's May 8, 2015 judgment awarding Marsh-Monsanto $16,320.84 under the second contract and remand for further proceedings with directions that the Superior Court dismiss Marsh-Monsanto's complaint with prejudice.

---

[8] Phillip also challenged the Superior Court's exclusion of a number of his proposed exhibits. Since Marsh-Monsanto's pleaded promissory note is unenforceable under the clear and unambiguous terms of the second contract, we need not address these evidentiary issues as part of this appeal.