

**FILED**
February 14, 2025 02:36 PM
ST-2022-CV-00240
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
\*\*\*\*

JUSTIN NIGG and LORRAINE NIGG,                )
                                                                      )
                    Plaintiffs,                                )
                                                                      )
          vs.                                                     )          CASE NO. ST-2022-CV-00240
                                                                      )
MARRIOTT HOTEL MANAGEMENT         )
COMPANY (VIRGIN ISLANDS), INC.,       )          **Cite as 2025 V.I. Super 5**
CREF3 USVI HOTEL OWNER, INC.,            )
MANITOU NORTH AMERICA, LLC.,           )
BLUEWATER CONSTRUCTION INC.,         )
JEREMY HENKEL, and PROJECT              )
DEVELOPMENT SERVICES, INC.               )
                                                                      )
                    Defendants.                              )
                                                                      )

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on Defendant CREF3 USVI Hotel Owner, Inc.'s

("CREF3") Rule 12(b)(6) Motion to Dismiss Count II (Contractual Indemnity) of Defendant

Project Development Services, Inc.'s ("PDSI") Crossclaims. For the reasons set forth below, the

Court will grant CREF3's Motion to Dismiss.

## I.        PROCEDURAL AND FACTUAL BACKGROUND

This action was filed on July 16, 2022, by Plaintiffs Justin Nigg (individually and as the

representative of the Estate of John Nigg) and Lorraine Nigg (individually)[1] against Defendants

CREF3, Marriott Hotel Management Company (Virgin Islands), Inc. ("Marriott"), Manitou North

America, LLC ("Manitou"), Bluewater Construction Inc. ("Bluewater"), and Jeremy Henkel.[2] On

---

[1] Justin Nigg is John Nigg's son, and Lorraine Nigg is John Nigg's mother.
[2] Marriot was dismissed by Notice of Dismissal filed on August 28, 2022. The Court granted Plaintiffs and
Manitou's Joint Motion for Dismissal with Prejudice on January 20, 2023.

February 16, 2023, Plaintiffs filed a First Amended Complaint ("Complaint"), adding PDSI as a defendant. According to the Complaint, in a Project Management Agreement effective May 1, 2021, CREF3 contracted PDSI to provide project management services in connection with the renovation of the Frenchman's Reef & Morning Star Marriott Beach Resort.[3] On July 17, 2021, Nigg had a fatal accident while operating a forklift used to renovate the hotel. Plaintiffs claim that "Nigg's death was caused by the wrongful acts and/or negligence of the Defendants."[4]

On October 17, 2024, PDSI filed an Answer, including Crossclaims against both Bluewater and CREF3. PDSI asserted that Bluewater and CREF3 "have failed to indemnify and/or defend PDSI thereby breaching their contractual obligations."[5] Specifically, PDSI claimed that "CREF3 agreed to obtain an owner-controlled insurance program ("OCIP policy") which was in place for the Frenchman's Reef & Morningstar Resort Restoration Project to broadly provide indemnity and defense to PDSI for damages because of 'bodily injury' that arises out of the Project."[6] Thus, PDSI claims that CREF3 must indemnify PDSI if the Court enters a judgment for damages against PDSI.

In turn, CREF3 moved to dismiss PDSI's Crossclaim for indemnification based on a failure to state a claim for relief under Rule 12(b)(6) of the Virgin Islands Rules of Civil Procedure ("VIRCP"). CREF3 asserted that it has no duty to indemnify PDSI under the OCIP Policy (effective on January 1, 2019) because the OCIP Policy is not an agreement between CREF3 and PDSI. CREF3 further argues that reference to the OCIP Policy would violate Rule 411 of the Virgin Islands Rules of Evidence. Moreover, CREF3 contends that a separate contract between the parties, the Project Management Agreement (effective on May 1, 2021), is controlling and, in fact,

---

[3] First Am. Compl. at ¶ 15
[4] First Am. Compl. at 9.
[5] PDSI's Crossclaim at 7.
[6] *Id.*

creates a duty on PDSI to indemnify and hold harmless CREF3 in this matter. The contract also states that the Agreement "supersedes any and all prior written or oral agreements or understandings between the parties."[7] As part of its Motion, CREF3 submitted copies of the OCIP Policy and Project Management Agreement to the Court.

On December 19, 2024, PDSI filed a Response, arguing that PDSI has adequately pled a claim for indemnity against CREF3 under this jurisdiction's notice-pleading standard. On January 8, 2025, CREF3 filed a Reply, reiterating its initial arguments and asserting that the Court may consider the Agreement's terms in conjunction with the OCIP Policy to determine the Motion to Dismiss.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the VIRCP governs motions to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) motions test the sufficiency of the complaint or crossclaim. *Hess Oil Virgin Islands Corp. v. Fluor Daniel*, 72 V.I. 676, 719 (V.I. Super. Ct. 2020). Under Rule 8(a)(2) of the VIRCP, "a pleading that states a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" This Court sits in a "notice-pleading jurisdiction." V.I. R. Civ. P. 8(a). Thus, a complaint or crossclaim is deemed sufficient "so long as it adequately alleges facts that put an accused party on notice of claims brought against it." *Mills-Williams v. Mapp*, 67 V.I. 574, 585 (V.I. 2017). Even if a complaint or crossclaim is "vague, inartfully drafted, a bare-bones outline, or not a model of specificity, the complaint may still be adequate so long as it can reasonably be read as supporting a claim for relief, giving the defendant notice of that claim." *Basic Servs., v. Gov't. of Virgin Islands*, 71 V.I.

---

[7] *See id.* at Section 26.

652, 660 (V.I. 2019) (quoting Casaday v. Allstate Ins. Co., 232 P.3d 1075, 1080 (Utah App. 2010).

The issue is "not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled

to offer evidence to support the claim." *Raymond v. Assefa*, 2017 WL 5303467, *2 (V.I. Super. Ct.

2017). Notice-pleading is a more liberal approach than the plausible claim standard applied in *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

In determining a 12(b)(6) motion, the Court "must accept all well-pleaded allegations as

true and view them in a light most favorable to the pleader." *Smith v. L. Offs. of Karin A. Bentz,*

*P.C.*, 2017 WL 3123463, *2 (V.I. Super. Ct. 2017). However, allegations will not be reasonable,

nor will inferences in favor of the plaintiff be fair, where they contradict facts contained in the

public records, are judicially noticed by the Court, a document the claimant relied on to frame its

claim or a document referenced in the pleadings whose authenticity the parties have not

questioned. *Hunt v. Downs*, 2021 V.I. LEXIS 66, *20 (V.I. Super. Ct. 2021).

## III. DISCUSSION

### (a) Consideration of the OCIP Policy and Project Management Agreement on a Rule 12(b)(6) Motion

Generally, a court ruling on a motion to dismiss may not consider matters extraneous to

the pleadings. If the court considers matters outside the pleadings when ruling on a Rule

12(b)(6) motion to dismiss, it must convert the motion into one for summary judgment.[8] *Island*

*Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 612 (V.I. 2012) ("if, on a motion under Rule 12(b)(6)

matters outside the pleadings are presented to and not excluded by the court, the motion *must* be

---

[8] *See* Rule 12(d) of the VIRCP, which states:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not
> excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All
> parties must be given a reasonable opportunity to present all the material that is pertinent to the
> motion.

treated as one for summary judgment under Rule 56"); *see also* V.I.R. Civ P. Rule 12(d). However, there are well-established exceptions to the general rule. A court may consider documents "(1) attached to the pleadings, (2) incorporated into the pleadings by reference, (3) of public record, and (4) integral to a claim or upon which the claim is based" without converting the motion to dismiss to a motion for summary judgment. *Virgin Islands Port Authority v. Four Star Aviation*, 2020 V.I. LEXIS 101, *3 (V.I. Super. Ct. 2020); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) ("Matters that are not outside the pleadings a court may consider on a motion to dismiss include the facts alleged in the complaint, documents attached as or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."). Thus, "the court may consider documents whose contents are alleged in the complaint [or crossclaim] and whose authenticity no party questions, but which are not physically attached to the pleading." *Guardian Ins. Co. v. Abdallah*, 74 V.I. 128, 130 (V.I. Super. Ct. 2021) (citing *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002); *Barnes v. GCI Operations, LLC*, 2017 WL 3613483, *2 (V.I. Super. Ct. 2017); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196, (3d. Cir. 1993) (in deciding a Rule 12(b)(6) motion to dismiss, a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.) *Daniels v. Dauphin Cnty. Dist. Attorney's Off.*, 2024 U.S. App. LEXIS 32077, *3 (3d. Cir. 2024) (a court may "consider extrinsic documents which are "integral to or explicitly relied upon in the complaint. . . as well as undisputedly authentic documents attached to a motion to dismiss.").

There is no need for the Court to convert CREF3's motion to dismiss into a motion for summary judgment. In this instance, the documents are explicitly identified in the pleadings, the authenticity of the documents has not been questioned, and they are integral to PDSI's crossclaim. The two documents CREF3 relies on to support its motion -OCIP Policy and -the Project Management Agreement - are referenced in the pleadings, and their authenticity has not been questioned. In Count II of the crossclaim, PDSI specifically references the "OCIP Policy."[9] Additionally, in paragraph 1 of its Answer, Affirmative Defenses and Crossclaims, PDSI also specifically admits to the allegation stated in paragraph 15 of the First Amended Complaint, which refers to the "Project Management Agreement effective May 1, 2021" by which "CREF3 engaged Project Development Services, Inc. . . to provide project management services in connection the renovation of the resort." In paragraph 4 of the crossclaim, PDSI alleges that 'CREF3 and PDSI were in privity of the contract with each other or intended third party beneficiaries of the contracts each was a party to." The OCIP Policy under which PDSI claims it is a third-party beneficiary, and the Project Development Agreement to which the parties are in privity are the two contracts attached to the motion to dismiss and which, obviously, are the documents integral to PDSI's claim. *See e.g., Mathis v. United Homes, LLC*, 607 F. Supp. 2d 411, 419 (E.D.N.Y. 2009) (the court considered the allegations set forth in the cross-claims and the plaintiffs' complaints, which were integral to the cross-claims, as well as the documents on which the cross-claims rely in ruling on a 12(b)(6) motion to dismiss). As long as the documents are integral to the claimant's claims, the Court may consider them even though they are not incorporated by reference in the crossclaim. Therefore, the documents attached to CREF3's motion, which are integral to the crossclaim, may

---

[9] Crossclaim at 14.

be considered by the Court without converting the motion to dismiss into one for summary judgment.

PDSI cannot overcome a 12(b)(6) motion by intentionally and improperly withholding essential documents that are integral to its crossclaim, undisputedly authentic, and upon which PDSI relied in asserting that crossclaim. Courts have been wary of the similar tactics advanced by PDSI in this case. *Hicks v. Wells Fargo Bank, N.A.*, 2020 U.S. Dist. LEXIS 104151, *7-8 (W.D.N.Y. 2020) (stating that a plaintiff whose claims are grounded on documents cannot "defeat a Rule 12(b)(6) motion simply by cherry-picking 'helpful' documents to cite in the complaint, while deliberately ignoring other relevant documents that might tend to undercut his claims."); *Soderlund v. Zibolski*, 874 N.W.2d 561, 570-71 (Wis. Ct. App. 2015) ("The incorporation-by-reference doctrine prevents a plaintiff from evading dismissal simply by failing to attach to his complaint a document that proves his claim has no merit."); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim - and that they apparently most wanted to avoid - may not serve as a means of forestalling the [] court's decision on [a 12(b)(6)] motion.").

Thus, in determining the Motion to Dismiss, the Court may consider both the OCIP Policy and the Project Management Agreement because they are documents integral to or explicitly relied upon by PDSI's Crossclaim. The Crossclaim cites the OCIP Policy; therefore, the Court may consider the document. Furthermore, under the incorporation-by-reference doctrine, the failure to mention or include a copy of the Agreement does not preclude its review by the Court. The Agreement is not a document that falls outside the pleadings, but rather, it is a document that the Court necessarily must address to determine whether PDSI is entitled to relief. Moreover, any concern about viewing documents outside of the complaint is dissipated by the fact that PDSI has

notice of the Agreement to which it is a party. The Court shall, therefore, consider the contents of the OCIP Policy and the Agreement when addressing CREF3's arguments.

### (b) The OCIP Policy

PDSI claims that pursuant to the "OCIP Program, CREF3 agreed to obtain an owner controlled "OCIP Policy" to "broadly provide indemnity and defense to PDSI for damages because of 'bodily injury' that arises out of the [Frenchman's Reef & Morningstar Resort Restoration] Project." It further claims that CREF3 has breached its contractual obligation by failing to indemnify or defend PDSI.[10] CREF3 counters that the OCIP Policy is not a contract between CREF3 and PDSI, and CREF3 has no indemnity obligation to PDSI under the OCIP policy. CREF3 argues that the "OCIP Policy is not an agreement between PDSI and CREF3. Rather, the OCIP Policy is a liability insurance policy procured by CREF3's predecessor in interest and later assigned to CREF3."[11] Therefore, CREF3 contends it has no duty to PDSI under the Policy and that PDSI is improperly attempting to litigate an insurance coverage dispute in this matter. In response to CREF3's claim that there is no privity of contract between CREF3 and PDSI under the OCIP Policy, PDSI argues that it is a third-party beneficiary under the OCIP policy.

To establish a breach of contract claim, PDSI must show that there was (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages. *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 621 (V.I. 2017). PDSI cannot satisfy the most basic element for a breach of contract claim as the OCIP policy is not an agreement between PDSI and CREF3. It is an agreement between the insurance company and the project owner. Hence, PDSI has no direct contractual claims against CREF3 under the OCIP Policy.

---

[10] Crossclaim at 13.
[11] Mot. to Dismiss at 5.

A review of the OCIP policy shows that the Project Owner (CREF3 as successor in interest) and "all contractors/subcontractors working on behalf of the Construction Manager and/or Project Owner and/or Project Owner's Representative for the [Frenchman's Reef & Morningstar Resort Restoration] Project" are insured under the policy.[12] Pursuant to the OCIP Policy, the obligations to be performed under the contract rest not on CREF3 but on the insurer. The insurer is required to provide any insurance coverage, not CREF3. In other words, CREF3 is the promisee, and the insurer is the promisor. The Supreme Court of the Virgin Islands has adopted the legal principle that "[a] promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise and the intended beneficiary may enforce that duty" *Petrus v. Queem Charotte Hotel Corp.*, 56 V.I. 548, 555 (V.I. 2012) (citing Restatement of (Second) of Contracts §304)); *see also*, *Prasad v. George Washington Univ.*, 390 F. Supp. 3d 1, 34, D.D.C.2019) ("[i]t is well established that an intended third-party beneficiary can sue the promisor to enforce a contractual covenant. The intended third-party beneficiary cannot, however, sue the promisee for breach of the promisee's contract with the promisor.").

The insurance policy provides that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.'"[13] To the extent that PDSI is an intended third-party beneficiary under the OCIP policy, its claim is against the non-party insurer. Therefore, based solely on the OCIP Policy, PDSI cannot hold CREF3 liable for indemnification.

**(c) The Project Management Agreement**

---

[12] OCIP Policy at 1.
[13] OCIP Policy at 4.

CREF3 asserts that a separate contract, the Project Management Agreement, controls and proves that PDSI's claim has no merit. The Court agrees. It is well-settled that "[w]here the language of a contract is clear and unambiguous, the parties' intent must be derived from the plain meaning of its terms." *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 625 (V.I. 2017) (citing 11 Williston on Contracts § 32:2 which provides that "[i]f the language clearly conveys the parties' lawful intentions, then ... the court is obligated to enforce the agreement according to its terms."). The Project Management Agreement's language is clear, and to the extent there are any conflicts, the Project Management Agreement supersedes the OCIP Policy, which was entered into before the Project Management Agreement.

The Project Management Agreement, in which PDSI promised to provide project management services for the renovation of the hotel, states in relevant part that:

> [PDSI] shall indemnify and *hold harmless* [CREF3] ... from and against any and all claims, liabilities, loss, damages, fines, penalties or costs ("Claims") of any nature, including reasonable attorneys' fees, whether by reason of death of or injury to any person or loss of or damage to any property or otherwise, to the extent arising out of (i) the negligent acts or omissions of [PDSI] or any of its employees or agents or (ii) the breach of this Agreement by [PDSI] or any of its employees or agents. [PDSI's] indemnification obligation under this Paragraph 15.1 shall not apply to the extent Claims are attributable to the gross negligence of willful misconduct of [CREF3] or Indemnitees.[14]

Furthermore, the Project Management Agreement includes an "Entirety of the Agreement" clause, providing that the Agreement "supersedes any and all prior written or oral agreements or understandings between the parties."[15] Adhering to the clause's plain language, the Project Management Agreement controls the relationship between PDSI and CREF3. Additionally, it would supersede the OCIP Policy because the Agreement was

---

[14] *See* Exhibit A at Section 15.1. (emphasis added).
[15] *See id.* at Section 26.

entered into in 2021 and the OCIP Policy in 2019. Moreover, the Agreement unambiguously provides that "[PDSI] shall indemnify and hold harmless [CREF3]" from claims based on the death of an individual that PDSI caused through its negligent acts or omissions. If PDSI is found liable for Nigg's death, the claim for indemnification necessarily arises out of PDSI's negligence that caused the death of a person. Thus, under the Agreement, PDSI must hold CREF3 harmless from any liability it may have in this matter, nullifying PDSI's Crossclaim for indemnification. Accordingly, the Court shall grant CREF3's Motion to Dismiss PDSI's Crossclaim for Contractual Indemnity (Count II).

## IV. CONCLUSION

The Court, having considered the OCIP Policy and the Project Management Agreement, finds that PDSI has failed to state a claim for relief. PDSI may not sue CREF3 to enforce the OCIP Policy as the Policy is not an agreement between PDSI and CREF3. PDSI, as an intended third-party beneficiary, may only enforce the OCIP Policy against the non-party insurer promisor, not the promisee, CREF3. Furthermore, even if the OCIP Policy could be enforced as to CREF3, the Project Management Agreement supersedes the OCIP Policy and protects CREF3 from PDSI's Crossclaim for indemnification. PDSI agreed to hold CREF3 harmless in the event PDSI's negligent acts caused the death of a person in relation to the renovation project of the Marriot hotel. The Court shall uphold the parties' promises. Accordingly, Defendant CREF3 USVI Hotel Owner, Inc.'s Rule 12(b)(6) Motion to Dismiss Count II (Contractual Indemnity) of Defendant Project Development Services, Inc.'s Crossclaims is granted.

Dated: 2/14/2024

**CAROL THOMAS JACOBS**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
Latoya Camacho
Court Clerk Supervisor 2/18/2025